64 A.3d 1049

COMMONWEALTH of Pennsylvania, Appellant

v.

Jamel CLAY, Appellee.

Commonwealth of Pennsylvania, Appellant

v.

Jason Sale Claybrook, Appellee.

Commonwealth of Pennsylvania, Appellant

v.

Rashid Lewis, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 12, 2012.

Decided Feb. 8, 2013.

without a significant police presence should be precluded from filling that void.

Nicholas J. Casenta Jr., Peter Hobart, Thomas P. Hogan Jr., West Chester, Gerald P. Morano, Chester County District Attorney's Office, for Commonwealth of Pennsylvania.

Amal Munas Bass, Terry L. Fromson, Philadelphia, Women's Law Project, for Appellant Amicus Curiae, Women's Law Project & 42 PA & Nat'l Organizations Dedicated to Justice for Victims of Sexual Assault.

Mark David Rassman, for Jamel Kwinton Clay.

David Paul Clark, Shehwen & Clark, P.C., for Jason Sale Claybrook.

Meredith Daniels Copeland, Chester County Public Defender's Office, John R. Merrick, West Chester, for Rashid Lewis.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In this discretionary appeal by the Commonwealth, we consider whether the Superior Court applied an incorrect standard of review with respect to a claim that the verdict was against the weight of the evidence. As we find the Superior Court employed an incorrect standard of review, and erroneously substituted its own conclusions for those of the jury and the trial court, we hold the Superior Court abused its discretion. Accordingly, we reverse and remand this matter to the Superior Court for reconsideration.

The relevant background of this matter is as follows. On February 7, 2009, at around 1:30 a.m., Jamel Clay, James Claybrook, and Rashid Lewis (collectively, "Appellees") visited R.B. at her college dormitory in West Chester, Pennsylvania. Upon their arrival at the dormitory, Appellees signed in and provided the security officer with photo identification. Appellees spent the next several hours socializing with R.B. and her friend, H.S., who lived in the same hall. Eventually, at approximately 3:30 a.m., the group discussed sleeping arrangements, and, according to Appellees, H.S. invited them to stay in her room. At trial, H.S. testified that Appellees "ended up" in her room because it was the one nearest to where the group was gathered at the time the socializing concluded, but she did not dispute that she allowed them to stay. There also was testimony at trial that H.S. had engaged in approximately 18 telephone calls with her friend Richard earlier in the evening, during which H.S. informed him that she was planning to allow Appellees to stay in her room, and Richard warned her not to do so.

When Claybrook and Lewis first entered H.S.'s room, Lewis sat on her bed and Claybrook sat on H.S.'s roommate's bed. Clay either entered the room at the same time as Claybrook and Lewis, or shortly thereafter. At trial, H.S. testified that she asked Lewis to get off her bed, but he refused, and so she laid down next to him, back to back. H.S. stated that, after five to ten minutes, Lewis attempted to kiss her, and when she said no and attempted to get off the bed, he pulled her towards him, kissed her, and fondled her breasts. H.S. testified that, at some point, she scratched Lewis in an effort to resist him.

Lewis testified that, after he sat on H.S.'s bed, H.S. never asked him to get off the bed, and it was she who attempted to kiss him. At some point, after Clay entered the room and laid down in H.S.'s roommate's bed, Claybrook got into H.S.'s bed with H.S. and Lewis. Over the next hour, all three Appellees engaged in vaginal intercourse and oral sex with H.S., some of which involved all three of the men at the same time. H.S.

also testified that each of the three men engaged in anal intercourse with her, although both Claybrook and Lewis denied having anal intercourse with H.S. Clay did not testify at trial. The hospital examination revealed ejaculate in H.S.'s rectum.

H.S. testified that Appellees initially restrained her, but conceded she was not held down the entire time. Appellees denied restraining H.S. at any time. Midway through the incident, Lewis and Clay left the room to obtain more condoms while Claybrook remained in the room with H.S. H.S. testified at trial that, during this time, Claybrook "was forcing me to have oral sex with him. . . . He had his hands on the side of my head and he forced his penis into my mouth." N.T. Trial, 10/26/09, at 162. When asked what kept her from leaving the room at that point, H.S. testified "I was just scared. I was really scared. I didn't know what was going to happen." *Id.* at 162–63. H.S. further testified that "they were three strangers that I didn't know, and they were forcing me to do these things with them." *Id.* at 163.

When Lewis and Clay returned, they each engaged in further sexual acts with H.S. H.S. testified that, except for the first time she told Lewis "no" when he tried to kiss her, she did not tell Appellees to stop, did not cry out for help, and did not attempt to leave the room. She explained in her trial testimony, when asked why she did not scream, that "[m]ost of the time I had somebody restrained over me, or I had somebod[y's] penis in my mouth." *Id.* at 165.

Thereafter, Appellees indicated they wanted to smoke, but H.S. asked them smoke outside so they would not set off the smoke alarm and get her in trouble. While Appellees were outside smoking, H.S. went down the hall to the bathroom and brushed her teeth. She then returned to her room and left the door open while she changed her sheets and picked up condoms from the floor. Appellees returned to the doorway of H.S.'s room [1] and Lewis asked for a clean shirt to wear, as

---

1. There was a dispute at trial as to whether Appellees actually entered H.S.'s room when they returned from smoking, or merely stood in the doorway to her room.

the shirt he was wearing had blood on it. H.S. gave him a clean shirt.

Appellees then left, at which point H.S. called her friend Richard and assured him that everything was fine. Several minutes later, however, she sent Richard a text message telling him that she had lied, that everything was not okay, and that she had been raped. H.S. then told her friend, R.B., that Appellees had raped her. At R.B.'s suggestion, H.S. contacted her Resident Assistant and Resident Director about the incident. The Resident Director reported the incident to campus police on H.S.'s behalf. H.S. then went to the hospital to be examined. Karen Dougherty, a registered nurse in the Crozier Emergency Department, examined H.S. Nurse Dougherty testified that she is a forensic nurse examiner and a sexual assault nurse examiner ("SANE") who had practiced nursing for 30 years and had conducted approximately 200 sexual assault exams. N.T. Trial, 10/27/09, at 484–86. Nurse Dougherty stated that, upon examining H.S., she observed a "suction mark" on her neck, a light scratch on her arm, a small abrasion on her inner elbow, and redness on her inner thighs. *Id.* at 491. The nurse also noted that H.S. told her she had scratched Lewis in self-defense.

Ultimately, Appellees were charged with rape, involuntary deviate sexual intercourse, criminal conspiracy, sexual assault, indecent assault, and false imprisonment. On October 29, 2009, following a three-day joint jury trial before the Honorable James MacElree, at which H.S. testified that she was sexually assaulted by all three appellees, and Claybrook and Lewis testified that the sexual encounters with H.S. were consensual, all three appellees were convicted of sexual assault,[2] indecent assault,[3] and false imprisonment.[4] On March 25, 2010, each Appellee was sentenced to two to four years incarceration and two years consecutive probation. Appellees filed a timely joint motion for post-sentence relief, arguing the evidence was insufficient to sustain their convictions on all of

2. 18 Pa.C.S.A. § 3124.1.

3. 18 Pa.C.S.A. § 3126.

4. 18 Pa.C.S.A. § 2903(a).

the charges and that the jury's verdicts were against the weight of the evidence.

On May 25, 2010, following a hearing, the trial court granted Appellees' motion for judgment of acquittal on the false imprisonment charges but denied Appellees' motion for judgment of acquittal and/or a new trial on the sexual assault and indecent assault charges. In reviewing Appellees' challenge to the weight of the evidence, the trial court, without citing to specific evidence in the record, opined that the case was "extremely close," and, although the court was "surprised and taken aback" by the jury's guilty verdicts on the sexual assault and indecent assault charges, the verdicts were not so contrary to the evidence as to shock the court's conscience. Trial Court Opinion at 6. The court, therefore, declined to grant Appellees a new trial, but noted "the jury's verdicts might shock the conscience of the Superior Court, in which case the Superior Court may vacate the judgment of sentence and remand the case for a new trial on the Sexual Assault and Indecent Assault charges." *Id.* at 6–7. Appellees each filed appeals, which were consolidated.

The Superior Court unanimously reversed the trial court's decision on Appellees' weight of the evidence claims. Although the court acknowledged that the proper standard of review was abuse of discretion, the court stated it "must look at the evidence as presented at trial to determine the proper outcome for this case." *Commonwealth v. Lewis, Clay, and Claybrook,* 1762 EDA 2010, 1835 EDA 2010, 1926 EDA 2010, unpublished memorandum at 9 (Pa.Super. filed May 24, 2011). The court then considered the evidence presented at trial and concluded it was "manifestly unreasonable" to conclude that H.S. did not consent to the sexual activity. *Id.* at 11. Specifically, the court noted: (1) at trial, H.S. denied inviting Appellees to sleep in her room, despite substantial evidence to the contrary; (2) when Lewis refused to get off her bed, H.S. did not demand Appellees leave her room, nor did she leave the room herself; (3) other than initially telling Lewis "no" when he attempted to kiss her and then scratching him, H.S. did not tell Appellees to stop, cry out for help, try to escape, or

physically resist Appellees; (4) after the sexual activity ended, H.S. felt comfortable asking Appellees to smoke outside and, while Appellees were outside, H.S. did not lock her door to keep Appellees from coming back to her room; (5) the evidence established that Appellees returned to H.S.'s room after smoking, despite H.S.'s trial testimony to the contrary; and (6) H.S. suffered "minor" physical injuries. *Id.* at 10. Based on these factors, the Superior Court concluded "despite Judge MacElree's statement that the verdict did not shock *his* conscience, guilty verdicts based on the record before us should shock the conscience of *anyone* seeking to 'reach a dispassionate conclusion.'" *Id.* at 11 (emphasis original). The court thus held the trial court's decision was an abuse of discretion and vacated Appellees' convictions.

The Commonwealth filed a petition for allowance of appeal, and we granted review of the following issues, ordering the appeals be consolidated:

(1) Did the Superior Court panel apply the wrong standard of review in this case by bypassing the analysis of the trial court's exercise of discretion on the challenge to the weight of the evidence and substituting its own judgment on this issue and its own interpretation of the underlying facts?

(2) In addition to erroneously reaching the weight claim directly rather than affording deference to the judgment of the court below, did the Superior Court panel further misapply the weight standard in clear contravention of prevailing precedent?

(3) In addition to usurping the discretion of the trial court judge and invading the province of the jury, did the Superior Court panel also draw factually and legally insupportable conclusions from the record?

*Commonwealth v. Claybrook*, 614 Pa. 330, 37 A.3d 1172 (2012) (order); *Commonwealth v. Lewis*, 614 Pa. 329, 37 A.3d 1172 (2012) (order); *Commonwealth v. Clay*, 614 Pa. 331, 37 A.3d 1173 (2012) (order).

The Commonwealth first contends that the Superior Court applied an improper standard of review when considering

Appellees' appeal of the trial court's denial of their weight of the evidence claims. Specifically, the Commonwealth argues the Superior Court erroneously substituted its own interpretation of the facts and conclusions for those of the jury and trial court, when it should have considered only whether the trial court abused its discretion by misapplying the law or basing its decision on partiality, prejudice, bias, or ill-will.

Appellees, conversely, argue the Superior Court was cognizant of the required level of deference to be afforded to the trial court, and correctly applied the abuse of discretion standard of review.[5] Appellees maintain, however, that, in order to determine whether the trial court did, in fact, abuse its discretion, it was necessary for the Superior Court to conduct a thorough review of the record:

> In *Commonwealth v. Brown,* 538 Pa. 410, 648 A.2d 1177 (Pa.1994) the [Supreme] Court observed "It is difficult for an appellate court to determine whether a trial court has abused its discretion, without reviewing the weight of the evidence as if it were the trial court. The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. "Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion." (*Id.* at 437, 648 A.2d) at 1190 (quoting *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985))[.]

Brief for Clay and Lewis at 14.[6] Appellees further suggest that if an appellate court is totally precluded from considering the facts of a case, an appellant could never obtain relief on a weight of the evidence claim, unless the trial court expressly acknowledges that the verdict was against the weight of the evidence, but chooses to let it stand. *Id.* at 16.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer,*

5. Clay and Lewis filed a joint brief. In a separate brief, Claybrook essentially echoes the arguments of Clay and Lewis.

6. This is a verbatim quote from Appellees' brief which, as discussed *infra,* is inaccurate in several respects.

560 Pa. 308, 319, 744 A.2d 745, 751–52 (2000); *Commonwealth v. Brown*, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 560 Pa. at 319–20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 538 Pa. at 435, 648 A.2d at 1189.

■■■■ An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (Pa.1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

■■■ This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfet-

tered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 560 Pa. at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184–85 (1993)).

▮ A review of the Superior Court's analysis in the instant matter reveals that the court, in reversing the trial court's decision, did not apply the proper abuse of discretion standard. Although the Superior Court used the phrase "manifestly unreasonable" in opining that the evidence did not support a finding that H.S. did not consent, *see Lewis, Clay, and Claybrook*, at 11 ("Unlike Judge MacElree, when we assess the central question in this case, whether [H.S.] consented to the sexual activity, we find it manifestly unreasonable to view the evidence, including her actions and those of Appellants, and conclude she did not consent."), the Superior Court's use of that language referred only to its own conclusion regarding the verdict.

▮ The Superior Court failed to consider the discretion exercised by the trial judge or the findings and reasons advanced by the judge in support of his determination that the verdicts were not against the weight of the evidence. As such, the Superior Court neglected to properly analyze whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will. *See Widmer*,

560 Pa. at 322, 744 A.2d at 753. In essence, the Superior Court stepped into the shoes of the trial judge and revisited the underlying question of whether the verdict was against the weight of the evidence, an analysis that is not appropriate under the appellate standard of review. *See Widmer.*

Moreover, with respect to Appellees' reliance on this Court's decision in *Brown, supra,* Appellees misquote this Court's language therein. Indeed, the language quoted by Appellees does not appear in either *Brown* or *Thompson, supra.* Rather, the phrase "it is difficult for an appellate court to determine whether a trial court has abused its discretion, without reviewing the weight of the evidence as if it were the trial court," comes from the Superior Court's decision in *Commonwealth v. Perez,* 444 Pa.Super. 570, 664 A.2d 582, 585, (1995), *abrogated on other grounds* by *Commonwealth v. Melendez–Rodriguez,* 856 A.2d 1278 (Pa.Super.2004), and *Perez* cited *Brown* as general support for the statement.

This Court's actual language in *Brown,* which was a verbatim quotation from our decision in *Thompson,* is as follows:

In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail. It is not the place of an appellate court to invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function.

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence; *not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury.*" Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Brown*, 538 Pa. at 436–37, 648 A.2d at 1190 (quoting *Thompson*, 507 Pa. at 599–600, 493 A.2d at 673) (emphasis added).

It is evident from the Superior Court's opinion that the Superior Court's decision was not based on a determination that the trial court exceeded its limits of judicial discretion or invaded the province of the jury. In fact, in view of the trial court's statement that it was "surprised and taken aback" by the jury's guilty verdicts on the sexual assault and indecent assault charges, but it could not say the verdicts were so contrary to the evidence as to shock the court's conscience, Trial Court Opinion at 6, the trial court took great pains to avoid substituting its judgment for that of the jury.[7] The Superior Court simply disagreed with the jury's verdict and improperly substituted its own conclusions therefor.

Where a reviewing court applies the incorrect legal standard, our court generally will remand the matter with appropriate directions. *See Widmer*, 560 Pa. at 321, 744 A.2d at 753.[8] Accordingly, we reverse the decision of the Superior Court and remand this matter to the Superior Court for reconsideration of Appellees' weight of the evidence claims under the appropriate abuse of discretion standard.

Reversed and remanded.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.

7. Some of the Superior Court's confusion may have resulted from the trial judge's suggestion that, although the jury's verdicts did not shock its conscience, "the jury's verdicts might shock the conscience of the Superior Court, in which case the Superior Court may vacate the judgment of sentence and remand the case for a new trial." Trial Court Opinion at 6–7. As discussed above, however, consideration of whether a verdict shock's the court's conscience is relevant only to a trial court's consideration of a weight of the evidence claim; it is not the standard to be applied by an appellate court on appeal.

8. In light of our holding and dispositions, we need not address the Commonwealth's second and third issues on appeal.