J-S08022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDDIE MITCHELL | |
| Appellant | No. 1743 EDA 2014 |

Appeal from the Judgment of Sentence of June 3, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0005026-2013

BEFORE:  DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                **FILED FEBRUARY 18, 2015**

Eddie Mitchell appeals the June 3, 2014, judgment of sentence.  We affirm.

The trial court set forth the pertinent factual history of this case as follows:

> On February 11, 2012, at about 5:15 p.m., in response to a radio call, Philadelphia Police Officer Joseph Pannick arrived at 2431 Master Street in Philadelphia.  Officer Pannick observed Maurice Hampton lying on Master Street [and] suffering from multiple gunshot wounds.  Officer Pannick observed a semi-automatic firearm on the ground about two feet away.  Officer Pannick transported Hampton to Temple University Hospital where he was pronounced dead at 5:27 p.m.
>
> According to Dr. Gary Lincoln Collins, Deputy Chief Medical Examiner and an expert in forensic pathology, Hampton sustained two perforating gunshot wounds to his torso.  One gunshot was to Hampton's left back that injured his heart, aorta, and lung, and exited through the chest.  The other gunshot was to his right back that hit his lung and exited through his chest.

Officer Edward Fidler of the Crime Scene Unit arrived at the crime scene at 6:08 p.m. Officer Fidler recovered fifteen ten-millimeter fired cartridge casings from the area of 25th and Master Streets and a projectile lodged in the tire of the van near where Hampton collapsed. All fifteen fired cartridge casings were fired from a single, unrecovered firearm. Near the same van, Officer Fidler also recovered a nine-millimeter Ruger semi-automatic firearm with a live round in the chamber and a magazine loaded with fifteen live rounds.

On February 11, 2012, at 9:10 p.m., Detective Thorsten Lucke, an expert in forensic recovery and analysis of surveillance video, recovered surveillance video from 3 Sisters Grocery located at 2500 West Master Street. The video shows the intersection of Master and 25th Streets and about eight minutes before the murder, Hampton appears on Master Street. At [5]:04 p.m., a burgundy vehicle parks on 25th Street near 3 Sisters Grocery. The video shows [Mitchell] waiting around the area of 25th and Master Streets for a few minutes prior to the incident. [Mitchell] is standing on 25th Street when Hampton exits the store holding a black plastic bag. As Hampton begins to walk north on 25th Street, [Mitchell] pulls out a gun and shoots at Hampton. Hampton turns and runs down Master Street. [Mitchell] chases after Hampton, but Hampton collapses near a van. [Mitchell] then runs southbound on 25th Street.

On the night of the shooting at about 5:15 p.m., Jakyle Young and his cousin Bashir McGough drove to the corner store located at 25th and Master Street[] in a burgundy Pontiac. Young spoke briefly with Hampton inside the corner store. Young and McGough left the store and got back into their car. On February 16, 2012, Young gave a statement to police in which he explained that while he was sitting in the car he observed Hampton walk down Master Street when a man he knew as "Abdul" started shooting at Hampton. Hampton heard about ten gunshots and saw Abdul run south on 25th Street. Young explained that he knew Abdul from the mosque on 2nd Street and Girard Avenue. On August 28, 2012, Young identified [Mitchell] as the shooter from a photo array. At trial, Young testified that he heard gunshots, but did not witness the shooting.

On April 16, 2012, Latoya Ransome, Hampton's girlfriend, gave a statement to police. Ransome was shown the surveillance video from which she identified the shooter as a man she knew as "Stacks." Ransome explained that Stacks and Hampton were

having problems because they were both dating a woman named Rasheeda Wesley. On September 5, 2012, Ransome identified [Mitchell] from a photo array as the shooter in the video. At trial, Ransome denied identifying [Mitchell].

A few weeks after the murder, Nichole Bennett, Hampton's sister, saw the surveillance video depicting the murder on an internet website. On April 17, 2012, after viewing the video in the Homicide Division, she identified the shooter as [Mitchell], a man she knew as "Stacks." Bennett gave the detectives Stacks' phone number, which was later determined to be [Mitchell's] phone number. Bennett explained that [Mitchell] and Hampton were having problems because they were dating the same woman. On July 30, 2012, Bennett identified [Mitchell] from a photo array. Bennett identified [Mitchell] as the shooter on the video at trial.

On September 6, 2012, [Mitchell] was arrested at his home on 1504 North Stillman Street.

Trial Court Opinion ("T.C.O."), 7/22/2014, at 2-4 (citations to the notes of testimony and footnotes omitted).

On June 3, 2014, following a jury trial, Mitchell was convicted of first-degree murder,[1] carrying a concealed firearm without a license,[2] and carrying a firearm in Philadelphia.[3] The trial court sentenced Mitchell to a life sentence without the possibility of parole for the first-degree murder conviction, a concurrent term of two and one-half to five years' imprisonment for carrying a concealed firearm without a license, and a

_____

[1]    18 Pa.C.S. § 2501.

[2]    18 Pa.C.S. § 6106.

[3]    18 Pa.C.S. § 6108.

concurrent term of one to two years' incarceration for carrying a firearm in Philadelphia. On June 3, 2014, Mitchell filed a timely post-sentence motion in which he raised, *inter alia*, a challenge to the weight of the evidence. Mitchell's counsel also filed a motion to withdraw as counsel. On June 6, 2014, the trial court appointed new counsel to represent Mitchell. On June 10, 2014, the trial court denied Mitchell's post-sentence motion.

On June 15, 2014, Mitchell filed a timely notice of appeal. On June 17, 2014, the trial court ordered Mitchell to submit a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On July 6, 2014, Mitchell filed a timely statement. On July 22, 2014, the trial court filed its opinion pursuant to Pa.R.A.P. 1925(a).

> Mitchell raises the following question for our review:
>
> Did the trial court err in denying [Mitchell's] post-sentence motion because [Mitchell's] conviction is against the weight of the evidence in that [Mitchell] was only identified by one non-recanting witness who was initially unable to identify [Mitchell]?

Brief for Mitchell at 4.

We review a weight of the evidence claim for an abuse of discretion. When assessing a weight claim, we apply the following standards:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000); **Commonwealth v. Brown**, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of

- 4 -

greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id.*** (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Brown***, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. ***Brown***, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> ***Widmer***, 744 A.2d at 753 (emphasis added).

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations modified).

> Our task in such a challenge is as follows:

> To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeds the limits of judicial discretion and invaded the exclusive domain of the jury. Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

***Brown***, 648 A.2d at 1190 (citation omitted).

Mitchell argues that the identification evidence presented at trial was so incredible and unreliable that it should have shocked the conscience of the court, necessitating a new trial. ***See*** Brief for Mitchell at 10-11. Mitchell points out that two of the witnesses, Young and Ransome, recanted their statements at trial, claiming that they did not identify Mitchell as the shooter. ***Id.*** Furthermore, Mitchell argues that the only non-recanting witness, Bennett, identified Mitchell as the shooter only after Bennett watched the surveillance footage in the presence of the homicide detectives. ***Id.*** Mitchell maintains that the surveillance footage led to a conclusory and speculative identification. Therefore, Mitchell argues that it was error for the trial court to deny his post-sentence motion. ***Id.*** at 8.

The Commonwealth responds that three witnesses identified Mitchell as the shooter in signed statements to police, which were later admitted into evidence. One of those witnesses, Bennett, identified Mitchell as the shooter at trial. ***See*** Brief for the Commonwealth at 5. Additionally, the Commonwealth contends that Mitchell had a motive for committing the crime: he and the Hampton had been fighting over the same woman. ***Id.*** at 7. The Commonwealth argues that the jury was free to believe the foregoing testimony and evidence. ***Id.*** Therefore, the Commonwealth argues, the trial court did not abuse its discretion in denying Mitchell's post-sentence motion. ***Id.***

In analyzing the facts of this case, the trial court determined that the evidence supported a finding that Mitchell was the shooter. T.C.O. at 5. The court relied upon a similar case, **Commonwealth v. Brown**, 52 A.3d 1139, 1162 (Pa. 2012), in which the Pennsylvania Supreme Court upheld an appellant's first-degree murder conviction when the only identification evidence was out-of-court identifications that were later recanted at trial. The trial court then concluded that the prior identifications, even though they were later recanted, supported the finding that Mitchell murdered Hampton. T.C.O. at 5. The trial court relied upon Bennett's statement to police identifying Mitchell as the shooter, as well as her in-court identification of Mitchell. T.C.O. at 6. Bennett explained that, although she initially could not identify anyone from the online surveillance video, she was able to identify Mitchell after viewing the video in a clearer format at the Homicide Division. **Id.** Lastly, the court relied upon the fact that Mitchell had a motive to murder Hampton. **Id.** The trial court concluded that verdict did not shock one's sense of justice. **Id.** We agree with the trial court, and discern no abuse of the court's discretion in denying the motion.

On February 11, 2012, at approximately 5:15 p.m., Officer Pannick observed Hampton lying on Master Street suffering from multiple gunshot wounds. After transporting him to the hospital, medical personnel pronounced Hampton dead at 5:27 p.m. Notes of Testimony ("N.T."), 5/28/2014, at 243, 245, 246-47; N.T., 5/29/2014, at 88.

On February 11, 2012, at 9:10 p.m., Detective Lucke recovered surveillance video from 3 Sisters Grocery located near the scene of the crime. The video also shows a burgundy vehicle located near the crime, as well as Mitchell waiting around the area for a few minutes prior to the incident. When Hampton exited the store and began to walk down the street, Mitchell pulled out a gun and shot Hampton. Hampton ran away, but soon after collapsed near a van while Mitchell fled the area. N.T., 5/28/2014, at 42, 44, 51-57.

On August 28, 2012, Young identified Mitchell as the shooter from a photo array. However, at trial Young testified that he heard gunshots but did not witness the shooting. N.T., 5/28/2014, at 75-76, 78, 84, 102-105, 109, 110, 130, 216-217.

On April 16, 2012, Ransome gave a statement to police identifying the shooter in the surveillance video as a man she knew as "Stacks." Ransome explained that Hampton and Stacks were dating the same woman. On September 5, 2012, Ransome identified Mitchell as the shooter from a photo array. However, at trial, Ransome denied ever identifying Mitchell. N.T., 5/28/2014, at 177, 180-181, 184-185, 195.

A few weeks after the murder, Bennett saw the surveillance video on a website but was unable to identify the shooter due to the poor quality of the video. However, on April 17, 2012, after viewing the surveillance video in better quality at the Homicide Division, Bennett identified the shooter as a man she knew as "Stacks." Bennett gave police Stacks' phone number,

which matched Mitchell's phone number. On July 30, 2012, Bennett identified Mitchell as the shooter from a photo array. Bennett also identified Mitchell as the shooter at trial. N.T., 5/29/2012, at 103-107, 111, 114, 116, 118; N.T., 6/2/2014, at 13-14.

Mitchell's argument relies upon the fact that only Bennett, who initially was unable to identify Mitchell as the shooter, did so at trial. However, Young and Ransome also identified Mitchell as the shooter in signed statements to police. Although those identifications were recanted at trial, a first-degree murder conviction nonetheless can be predicated exclusively, or in part, upon out-of-court identifications that are recanted at trial. *See* ***Brown***, 52 A.3d at 1162. Therefore, Young and Ransome's out-of-court identifications support the conclusion that Mitchell murdered Hampton. Additionally, Bennett identified Mitchell as the shooter to the police and during Mitchell's trial. The jury was free to believe or disbelieve any testimony in reaching its verdict. Furthermore, the jury viewed the surveillance video, allowing the jurors to identify the shooter for themselves. The aforementioned evidence is further corroborated by the fact that Mitchell had a motive to kill Hampton, namely that the two were fighting over the same woman. The record adequately supports the jury's verdict, and we find no abuse of discretion by the trial court in denying Mitchell's weight of the evidence claim. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/18/2015</u>