J-S26011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK WILLIAM ANDREWS | |
| Appellant | No. 261 MDA 2021 |

Appeal from the Judgment of Sentence September 2, 2020
In the Court of Common Pleas of Lebanon County
Criminal Division at No: CP-38-CR-0000988-2019

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                **FILED: OCTOBER 14, 2021**

Appellant, Mark William Andrews, appeals from his judgment of sentence of two days to six months' imprisonment for two counts of driving under the influence, 75 Pa.C.S.A. §§ 3802(a)(1) and (b), and careless driving, 75 Pa.C.S.A. § 1714.  Appellant challenges the sufficiency of the evidence and, in the alternative, seeks a new trial due to the Commonwealth's failure to present a witness concerning the chain of custody of a blood sample procured from Appellant following his arrest.  We affirm.

The trial court recounted the evidence as follows:

[Pennsylvania State] Trooper [George] Shimko testified that at around 1:50 in the morning on April 7, 2019, he was driving northbound on Route 72 when he observed a Ford F-150 with Maryland registration 6EB 1031 in the opposing lane swerve over the fog line.  Trooper Shimko performed a U-turn and pulled up behind the truck, whereupon he saw it driving mostly off the right side of the road, over the fog line.  Trooper Shimko activated the emergency lights at that point and stopped the Ford.  At trial he

identified Appellant as the driver of the truck. While speaking with Appellant, Trooper Shimko smelled the odor of alcohol, saw the Appellant's eyes were red and glassy, observed the Appellant's speech was slurring, and noticed the Appellant fumble with his license and registration. Based on his training and experience in the detection of impaired drivers and twenty-one (21) years in law enforcement, Trooper Shimko initiated field sobriety tests.

Appellant told the Trooper that he had had surgery about a month prior but that he would be able to stand and walk for the test. Appellant agreed to perform the tests but lost his balance to the point that Trooper Shimko stopped the walk and turn test for Appellant's safety. Trooper Shimko then placed Appellant under arrest and transported him to Good Samaritan Hospital, where he read Appellant the O'Connell Warnings at around 2:50 in the morning. Appellant consented, and Samantha Yeagley performed the blood draw at 3:06 a.m. Trooper Shimko then transported the blood sample in the sealed kit to Jonestown State Police Barracks and placed it into evidence to wait until it could be transported to the Harrisburg State Police Lab.

Samantha Yeagley testified that she performed the blood draw of Mark Andrews the morning of April 7th, 2019 according to her training as a phlebotomist. She sealed the tube with Appellant's blood sample and tested the kit to make sure it was not compromised and followed all other procedures consistent with her training.

Trooper Vance testified that he transported the blood sample from the Jonestown Barracks to the State Police Regional Lab in Harrisburg on April 9th, 2019. When he removed it from the State Police Barracks, he did not see any damage to the sample. When he handed the sample over to the Harrisburg Lab, the kit was undamaged and remained sealed. The receipt Trooper Vance received from the Harrisburg Lab shows that Amy Leitzel was the evidence technician who signed for the kit.

Caitlynne Brophy was qualified as an expert in forensic toxicology at trial and testified that she tested Appellant's blood sample. She did not observe tampering or damage to the sample when she took it into her custody, and the instruments she used were calibrated and functioning properly. She tested the blood sample using gas chromatography and ionization on April 11, 2019. Ms. Brophy testified that she was able to determine that the BAC of

the sample was 0.130 plus or minus 0.016. Exhibit No. 5 is the lab report that Ms. Brophy generated in this case.

At the close of the Commonwealth's case, Defense Counsel moved for judgement of acquittal, which this Court denied. The Defense did not present any witnesses. On the above summarized testimony and admitted exhibits, the Court found Appellant guilty on all counts.

Trial Court Opinion, 3/29/21, at 3-4 (citations omitted).

On September 2, 2020, the court imposed sentence. On September 14, 2020, Appellant filed a timely post-sentence motion, which was deemed denied on behalf of the trial court by the Clerk of Courts pursuant to Pa.R.Crim.P. 720(B)(3)(c) on January 27, 2021. On February 10, 2021, Appellant filed a notice of appeal to this Court.

Before addressing the issues in Appellant's brief, we examine whether this appeal is timely. A notice of appeal must be filed within 30 days of the entry of the order being appealed. Pa.R.A.P. 903(a). If the defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). A trial court has 120 days to decide a post-sentence motion, and if it fails to decide the motion within that period, the motion is deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a). When the motion is deemed denied by operation of law, the clerk of courts shall enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties. Pa.R.Crim.P. 720(B)(3)(c). The notice of appeal shall be filed within 30 days of the entry of the order denying the motion by operation of law. Pa.R.Crim.P.

720(A)(2)(b). Here, the 120-day period for decision on Appellant's post-sentence motion expired on January 12, 2021. Instead of entering an order deeming the motion denied on that date, the clerk of courts delayed entering an order until January 27, 2021. This Court has held that a court breakdown occurs when the trial court clerk fails to enter an order deeming post-sentence motions denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c). *Commonwealth v. Patterson*, 940 A.2d 493, 498-99 (Pa. Super. 2007). Moreover, the appeal herein was filed within thirty days of January 12, 2021. Accordingly, this appeal is timely.

Appellant raises the following issues in this appeal:

1. Should the Appellant's Motion for Judgement of Acquittal be granted because the Commonwealth failed to prove beyond a reasonable doubt that [his] BAC was over the legal limit of .08% and that [he] was incapable of safe driving?

2. Should Appellant's Motion for a New Trial be granted without admission of the lab report where the Trial Court erred by admitting the toxicology report over Appellant's objection because the Commonwealth failed to present the testimony of a Laboratory Evidence Technician who took possession of Appellant's sealed blood specimen kit from Trooper Ralph Vance, checked the kit into the laboratory, and secured the kit at the laboratory before testing?

3. Should Appellant's Motion for a New Trial be granted because the Trial Court gave too great a weight to the toxicology report where the Commonwealth failed to present testimony from a Lab Evidence Technician who handled the blood sample when establishing the change of custody?

Appellant's Brief at 4.

In his first issue, Appellant challenges the sufficiency of evidence supporting his DUI convictions. Without supporting argument, he asserts in boilerplate fashion, "[Appellant] asserts that the Commonwealth failed to present sufficient evidence at trial that his BAC was over the legal limit and that he was incapable of safe driving." Appellant's Brief at 11. Although the lack of supporting argument likely constitutes a waiver of this claim, we will address its substance because it is simple to resolve.

When we review challenges to the sufficiency of the evidence,

[o]ur standard of review is de novo, and our scope of review is plenary, because:

a claim challenging the sufficiency of the evidence is a question of law. ... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Neysmith**, 192 A.3d 184, 189 (Pa. Super. 2018). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

The general impairment subsection of the DUI statute provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. §

3802(a)(1). Section 3802(a)(1) is an "at the time of driving" offense, i.e., an offense requiring proof that the defendant was "driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol."

Section 3802(a)(1) permits multiple types of evidence to prove DUI-general impairment, including BAC evidence:

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

**Commonwealth v. Segida**, 985 A.2d 871, 879 (Pa. 2009).

The trial court correctly concluded that the evidence was sufficient to support Appellant's conviction for DUI-general impairment:

> Trooper Shimko testified that he pulled the truck over after observing it driving over the fog line, and that Appellant was the driver. [Trooper] Shimko testified that he observed the Appellant to have signs of intoxication such as bloodshot, glassy eyes, odor of alcohol, slurred speech, and lack of coordinated movement in the form of fumbling with documents and inability to maintain

balance. While defense counsel did elicit testimony on cross examination to show that no other drivers were made unsafe by Appellant's swerving away from oncoming traffic lane, the Court reasons that the common sense meaning of "safe driving" includes the safety of Appellant himself. Additionally, although evidence of Appellant's BAC is not necessary to prove general impairment, Ms. Brophy's testimony and the lab report of Exhibit No. 5, are relevant and probative of Appellant's incapability of safely driving because a BAC of 0.13% is over the legal limit and that limit is set by statute because a high BAC can cause unsafe driving. Taken all together these facts are sufficient to prove Appellant was not capable of safely driving due to the consumption of alcohol when Trooper Shimko pulled him over, and therefore support the guilty verdict under 75 Pa.C.S.A. §3802(a)(1).

Trial Court Opinion, 3/29/21, at 12.

The high rate of alcohol subsection of the DUI statute provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(b).

The trial court correctly reasoned that the evidence was sufficient to

support Appellant's conviction under this subsection:

The Commonwealth offered evidence that Appellant was driving a Ford F-150 truck and that his BAC was 0.13% within two hours of driving that truck. Trooper Shimko testified that he pulled the truck over at around 1:50 a.m. on April 7, 2019, and at trial identified Appellant as the driver of the truck. [Trooper] Shimko was present for Appellant's blood draw at Good Samaritan Hospital and testified that it occurred at 3:07 a.m., about an hour and twenty minutes after Appellant stopped driving. Ms. Brophy's testimony about her test of Appellant's blood, and the lab report she generated, admitted as Exhibit No. 5, indicate that Appellant's BAC at the time of the blood draw was 0.13% (±.016%). These

facts are sufficient to prove the two elements of 75 Pa.C.S.A. § 3802(b).

Trial Court Opinion, 3/29/21, at 9-10.

For these reasons, Appellant's challenge to the sufficiency of the evidence fails.

Appellant's second issue is that the trial court erred in admitting the Commonwealth's toxicology report because the Commonwealth failed to present the testimony of the laboratory evidence technician who took possession of Appellant's sealed blood specimen kit from Trooper Vance. Once again, Appellant arguably has waived this issue by failing to present more than boilerplate argument on this subject. **See** Appellant's Brief at 12.

Assuming that Appellant did not waive this issue, it is devoid of merit. "The Commonwealth does not have to establish the sanctity of its exhibits beyond a moral certainty; it is sufficient that the evidence allows a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court." **Commonwealth v. Miller**, 371 A.2d 1362, 1365 (Pa. Super. 1977). "[A]ny issue regarding gaps in the chain of custody relate to the weight of the evidence, not its admissibility." **Commonwealth v. Whitmayer**, 144 A.3d 939, 950 (Pa. Super. 2016). "There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence." **Commonwealth v. Jenkins**, 332 A.2d 490, 492 (Pa. Super. 1974). A certifying scientist may testify to independent

verification of chain of custody of a sample in his laboratory. ***Commonwealth v. Yohe***, 79 A.3d 520, 541 (Pa. 2013). Such testimony satisfies the defendant's rights under the Confrontation Clause. ***Id.*** The remote possibility of potential misconduct at a laboratory does not entitle the defendant to engage in a fishing expedition of every witness who handled a particular sample. ***Id.*** at 542. If the defendant believes that mishandling took place, he may subpoena anyone he deems appropriate to testify as to any alleged error. ***Id.***

In the present case, the Commonwealth presented testimony of the phlebotomist who took the blood sample. The Commonwealth's witnesses took account of the blood sample from the time the sample was taken until its delivery to the Harrisburg Regional Laboratory. Once at the lab, the individual who tested the sample, Brophy, explained that the sample was properly sealed, and that there was no evidence that the sample was compromised in any way. This evidence demonstrates that the sample was properly sealed at the hospital and remained sealed until it was analyzed. Defendant's symptoms and actions during the traffic stop corroborate the accuracy of the testing. If Appellant wanted to uncover mishandling of the blood sample, he could have called Amy Leitzel, the technician who received the kit from Trooper Vance, as a witness. Appellant did not do so. For these reasons, Appellant's challenge to the chain of custody fails.

Finally, Appellant claims that a new trial is warranted because the alleged defect in the chain of custody of his blood sample shocks the conscience. We disagree.

Our Supreme Court has instructed as follows:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). This Court does not step into the shoes of the trial court to revisit whether the verdict was against the evidence. Rather, our task is to "analyze whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Id.* at 1056. A new trial should only be awarded "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* at 1055; *see Commonwealth v. Konias*, 136 A.3d 1014, 1022 (Pa. Super. 2016) (applying same standard to bench trial).

Here, the trial court acted within its discretion by determining that a new trial was not necessary. The basis upon which Appellant seeks a new trial, the chain of custody issue, does not entitle him to relief because there was substantial evidence that his blood sample was not compromised. The

trial court properly determined that the evidence on this subject did not shock its conscience.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2021