J-S16009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
YADAV TIMSINA :
:
Appellant : No. 1153 MDA 2024

Appeal from the Judgment of Sentence Entered March 13, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000170-2023

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: AUGUST 21, 2025**

Yadav Timsina appeals from the judgment of sentence, entered in the
Court of Common Pleas of Lebanon County, after the trial court found him
guilty, in a nonjury trial, of driving under the influence (DUI): general
impairment,[1] DUI: highest rate of alcohol,[2] and related summary traffic
offenses. On appeal, he challenges the chain of custody supporting the testing
of his blood by the Commonwealth's expert witness. We affirm.

The parties proceeded to a nonjury trial before the Honorable John C.
Tylwalk on January 16, 2024, where the Commonwealth presented the
following evidence. Matthew Fagan was driving to work around 6:15 a.m. on
October 25, 2022, on East Main Street. A white SUV in front of him swerved

_____

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] *Id.* at § 3802(c).

within its own lane and crossed over into the opposite lane on multiple occasions. Fagan then "backed off" as "it looked like [the driver] was . . . impaired." N.T. Trial, 1/16/24, at 7. After a few miles, Fagan observed the white SUV crash into a parked vehicle. Fagan called the police and, while awaiting their arrival, helped the driver, later identified as Timsina, exit the vehicle. Fagan smelled alcohol on Timsina's breath.

Frank Bucsi, an officer employed by the Palmyra Borough Police Department, arrived and spoke with Timsina, who appeared "kind of out of it." *Id.* at 23. Timsina's speech "was slow and slurred" and he "was unsteady on his feet." *Id*. Officer Bucsi also noted Timsina had "red, bloodshot eyes" and a "heavy odor of alcohol . . . on his breath and person." *Id.* He arrested Timsina and transported him to Good Samaritan Hospital (GSH) for a blood draw. Officer Bucsi took the blood from the phlebotomist, and "transported it to Lebanon County Booking[,] where [he] relinquished it to [b]ooking staff." *Id.* at 28. He testified that he had no further responsibilities related to sending the evidence for testing, as the booking staff "send[s] it out to the lab[.]" *Id.* at 29.

Nicole Blascovich, a forensic scientist for the Pennsylvania State Police (PSP) Crime Lab, testified as an expert witness in the field of blood alcohol analysis. She personally tested a blood sample marked as "having been received or drawn from Yadav Timsina," *id.* at 46, and opined that the blood alcohol content (BAC) of the sample was between .203 to .259 percent. *See id.* at 51. Regarding the evidence tested in this case, Blascovich testified that

"the outside of the [blood] kit itself had an incident number relating to this case and then also had a name associated with this case . . . on the outside of the kit, and then the blood tube itself was labeled" with Timsina's name. *Id.* at 46. She also confirmed that the evidence had been properly sealed and that she observed no signs of tampering. *Id.* at 47.

The trial court found Timsina guilty of the above offenses and sentenced him to six months of probation. Timsina timely filed a post-sentence motion challenging the weight of the evidence, followed by a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.[3] He raises the following issues on appeal:

1. Whether the [trial court's] verdict as to DUI, highest rate of alcohol, was against the weight of the evidence because a chain of custody for [Timsina']s blood was not established?

2. Whether the [trial court's] verdict as to DUI, general impairment, was against the weight of the evidence because a chain of custody for [Timsina]'s blood was not established.

Appellant's Brief, at 8 (unnecessary capitalization omitted).

Timsina challenges the validity of Blascovich's testimony establishing Timsina's BAC based on gaps in the chain of custody. Timsina avers that the Commonwealth failed to show that the blood tested by Blascovich was in the same condition as the blood drawn by the phlebotomist and handed to Officer Bucsi. The first claim addresses the conviction for DUI: highest rate of

---

[3] The trial court denied the motion on July 19, 2024, with an accompanying opinion. The court subsequently adopted that filing as its Rule 1925(a) opinion.

alcohol, and the second corresponds to DUI: general impairment. While the Commonwealth does not need to show a particular BAC level to sustain the general impairment version of DUI, for ease of reference we address the claims jointly, as Timsina concedes that the weight of the evidence supports the convictions if the chain of custody was sufficiently established. **See** Appellant's Brief, at 17 (asserting "the finding that he had a [BAC] above a [0].16 was against the weight of the evidence because the Commonwealth's [c]hain of [c]ustody was of insufficient weight"); **id.** at 22 (arguing general impairment charge not supported, as high BAC level "has the unavoidable impact of influencing the finder of fact when determining whether an individual is under the influence of alcohol").

"Gaps in the chain of custody . . . go to the weight of the evidence and not its admissibility." **Commonwealth v. Feliciano**, 67 A.3d 19, 29 (Pa. Super. 2013) *(*en banc). Our standard of review when addressing a weight-of-the-evidence claim is well-settled.

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. The Pennsylvania Supreme Court has explained that appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court.

**Commonwealth v. Childs**, 63 A.3d 323, 326–27 (Pa. Super. 2013) (citation omitted). Applying these principles is somewhat unusual in the non-jury

context, as we recently explained in **_Commonwealth v. Banniger_**, 303 A.3d

1085, 1095 (Pa. Super. 2023).

> Notably, the trial court's role changes in ruling on a post-sentence motion after a non-jury trial. "Post-trial, the court cannot re-deliberate[,] as it is no longer the fact finder." **_Commonwealth v. Wilson_**, 227 A.3d 928, 938 (Pa. Super. 2020) (quoting **_Commonwealth v. Robinson_**, 33 A.3d 89, 94 (Pa. Super. 2011)). "Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience." **_Commonwealth v. Wise_**, No. 1145 EDA 2021, 2022 WL 2442141, at *5 (Pa. Super. July 5, 2022) (non-precedential decision).

**_Id._** at 1095.

Furthermore, "[o]ne of the least assailable reasons for granting or

denying a new trial is the lower court's determination that the verdict was or

was not against the weight of the evidence and that new process was or was

not dictated by the interests of justice." **_Commonwealth v. Morales_**, 91

A.3d 80, 91 (Pa. 2014) (citation omitted).

With these principles in mind, we examine the trial court's rationale for

rejecting the weight claim as set forth in its Rule 1925(a) opinion.

> In this case, the Commonwealth presented the testimony of Officer Bucsi, who explained that he took [Timsina] to GSH where the blood sample was drawn, that he took possession of the blood sample from the GSH phlebotomist, and that he then took it to [c]entral [b]ooking for it to be sent to the PSP lab for analysis. Blascovich explained the procedure followed when a sample arrives at the PSP lab. When she received a sample, she would check the name and barcode, and ensure that the identifiers were a match and she did that in this case. She confirmed that there was no tampering with the sample as the evidence tape was still intact before she performed her analysis.

We believe that any gaps in the evidence regarding the chain of custody of the sample were inconsequential. The evidence was in the same condition when it arrived at the PSP lab as when the blood was []drawn from [Timsina], given to Officer Bucsi, and delivered to [c]entral [b]ooking by Officer Bucsi. The Commonwealth was not required to produce the testimony of each and every individual who may have been in possession during transportation of the sample and [Timsina] can point to no evidence to indicate the possibility of any mishandling or tampering. There was no denial of justice[,] as we took all of this evidence into consideration in accepting the results of the blood analysis.

Trial Court Opinion, 7/19/24, at 9-10.

We discern no abuse of discretion in the trial court's explanation for why its verdict did not shock its own conscience. We must "consider . . . the findings and reasons advanced by the judge in support of [the] determination that the verdicts were not against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013). The trial court's ruling is based on a reasoned judgment amply supported by the trial testimony.

Furthermore, while Timsina nominally raises a weight challenge, the arguments in support do not address that concept, as Timsina argues that the BAC should not be considered as a matter of law even if Officer Bucsi and Blasocivch were wholly credible in their testimony for weight purposes. He maintains that "there is a massive gap in the chain of custody." Appellant's Brief, at 18. He notes that Officer Bucsi testified that he had no further involvement with the blood after passing it off, and "[a]s such, it is unclear what happened with the sample after Officer Bucsi gave the sample to the

booking center." *Id.*   Therefore, Timsina appears to argue that the expert opinion was unsupported in the absence of evidence showing what happened to the evidence between Officer Bucsi turning it over to his coworker and the PSP lab receiving the evidence.

We disagree that the Commonwealth is required to show *all* links in the chain.   In *Feliciano*, *supra,* our full Court clarified that:

> [] "There is no rule requiring the prosecution to produce as witnesses all persons who were in a position to come into contact with the article sought to be introduced in evidence. Physical evidence may be properly admitted despite gaps in testimony regarding custody."  *Commonwealth v. Jenkins,* [] 332 A.2d 490, 492 ([Pa. Super.] 1974) (internal citations and quotations omitted).   Pointedly, this Court has upheld the chain of custody based on less testimony.  *See* [*Commonwealth v.*] *Martin*, [419 A.2d 795,] 797-98 [(Pa. Super. 1980)].   Lastly, [the a]ppellant incorrectly argues this issue as though it were related to the admissibility of the evidence.   Gaps in the chain of custody, the underlying issue of [the a]ppellant's argument, go to the weight of the evidence and not its admissibility.   *Commonwealth v. Copenhefer,* [] 719 A.2d 242, 256 ([Pa.] 1998).

*Feliciano*, 67 A.3d at 29.

Similarly, while there is a gap between Officer Bucsi handing the evidence to a coworker and the kit's arrival at the PSP lab, the evidentiary effect of that gap falls within the rule that the Commonwealth need not "produce as witnesses all persons who were in a position to come into contact" with the blood.  *Id.*   The Commonwealth's evidence must only "establish a reasonable inference that the identity and condition of the exhibits remain[ed] unimpaired" until tested.  *Martin*, 419 A.2d at 798 (citation omitted).   The trial court was, therefore, entitled to conclude in its fact-finding capacity that

the evidence kit opened by Blascovich was sealed by the booking officer.[4]  The trial court's decision to regard the gap as inconsequential did not shock its conscience, and we find no abuse of discretion in that regard.  We therefore reject both weight challenges.

Judgment of sentence affirmed.

Judgment Entered.

![signature: Benjamin D. Kohler]

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/21/2025

_____

[4] Timsina alleges that there was a conflict in the testimony.  "The only thing that we do know from the testimony is that there is a conflict regarding who sent the sample.  The lab analyst testified that it was sent by Officer Bucsi[,] but Officer Bucsi said his involvement with the sample ended when he gave it to booking."  Appellant's Brief, at 19.  Timsina fails to cite the transcript.  Presumably, he references this exchange:

> Q. Does [the blood] have an officer's name on that?
>
> A. Yes.
>
> Q. And who's -- would that officer be?
>
> A. Frank Bucsi, B- U- C- S- I.

N.T. Trial, 1/16/24, at 47-48.  This testimony does not say that Officer Bucsi personally sent the kit as it is logical to conclude that the booking officer wrote down the name of the officer who handed him the sample.