J. S44009/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                                    :          PENNSYLVANIA
                              v.                           :
                                                                    :
RAFIQ SMITH,                                   :          No. 1777 EDA 2015
                                                                    :
                       Appellant                 :


Appeal from the Judgment of Sentence, May 15, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0003850-2013


BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MUSMANNO, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 11, 2016**

Rafiq Smith appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on May 15, 2015, after a jury convicted him of rape, involuntary deviate sexual intercourse ("IDSI"), robbery, sexual assault, and kidnapping.[1]   The trial court sentenced appellant to an aggregate term of incarceration of 20 to 40 years.   We affirm.

The trial court set forth the following factual history:

> On March 6, 2013, at 5:00 P.M., the complainant attended a wine and pizza party at work.  She had approximately four glasses of wine at the party.  After the party, the complainant and some of her co-workers went to a nearby restaurant,

[1] 18 Pa.C.S.A. § 3121(a)(1), 18 Pa.C.S.A. § 3123(a)(1), 18 Pa.C.S.A. § 3701(a)(1), 18 Pa.C.S.A. § 3124.1, and 18 Pa.C.S.A. § 2901(a)(2), respectively.

where the complainant had approximately three frozen margaritas. The complainant left the restaurant with one of her co-workers to catch the train home. She felt the effects of the alcohol as they walked to the station. Once they arrived, the complainant and her co-worker parted ways to catch their respective trains.

As the complainant was walking toward her train, [appellant] approached her. Although [appellant] was a complete stranger, he linked his arm with the complainant's arm and started leading her away. He took the complainant's pocketbook and removed her knife, cell phone, bus pass, lighter, and cash. After taking these items, [appellant] returned the pocketbook to complainant. He told her that if she did as he said, she would not get hurt. Even though there were other people in the vicinity, the complainant went with [appellant] out of fear.[Footnote 8]

> [Footnote 8] Video footage from the train station showed [appellant] and complainant walking together at approximately 10:30 P.M. The complainant identified the image as having been taken before [appellant] sexually assaulted her.

[Appellant] continued to physically hold the complainant and direct her through the station until they reached an isolated area. The complainant became disoriented because they walked a "very long time," and it was "pitch black." They walked through a metal door and approached a set of concrete steps. [Appellant] sat the complainant down on the steps. After telling the complainant that he wanted her to "suck his dick," [appellant] put his penis in the complainant's mouth without her consent and then ejaculated. [Appellant] also put a white powdery substance -- which he said was cocaine -- in the complainant's mouth.

Next, [appellant] took down the complainant's pants and inserted his penis in her vagina without her consent. She was still too afraid to say or do anything. [Appellant] said, "I bet this is the first big black dick you've ever had before, huh?" After [appellant] vaginally penetrated complainant, he helped her pull up her pants and walked her back through the metal doors and to the restroom. [Appellant] told the complainant to clean herself up in the restroom and not to look back.

Once in the bathroom, the complainant saw that she had blood in her underpants that had not been there before the assault.[Footnote 9] She cleaned herself up, walked over to the station's waiting area, and sat down. After processing what had happened, she reported the assault to transit police.

> [Footnote 9] The 54 year-old complainant had gone through menopause years earlier and was no longer menstruating.

On March 7, 2013, at approximately midnight, Southeastern Pennsylvania Transit Authority ("SEPTA") Police Officer Thomas Krouse responded to the police radio call for a reported robbery and rape. Officer Krouse had seen the complainant in the train station approximately an hour and a half before getting the radio call. When he saw her, [appellant] had his arm around her and appeared to be escorting her through the station. Officer Krouse recalled thinking that the complainant was intoxicated and that [appellant] was holding her up.

The complainant was visibly upset when Officer Krouse approached her in response to the police radio call. She told him that she had been robbed and raped. The complainant was brought to the Special Victims Unit where she gave a statement to Detective Thomas Martinka in the early morning hours of March 7, 2013. After the complainant's interview with Detective Martinka, sexual assault

nurse examiner Karen Dougherty, [R.N.,] examined the complainant at the Philadelphia Sexual Assault Center. Nurse Dougherty gathered information concerning the complainant's medical history, [appellant], and the nature of the assault. Based on the complainant's account, Nurse Dougherty noted that [appellant] had grabbed the complainant and told her she would be okay if she listened to him. Nurse Dougherty recorded the complainant's allegation that [appellant] had penetrated her vaginally with his penis, and had inserted his penis in her mouth.[Footnote 10] Nurse Dougherty also noted the complainant's allegation that [appellant] forced her to ingest cocaine.

> [Footnote 10] Nurse Dougherty noted the complainant's allegation that [appellant] penetrated her vagina with his finger.

Nurse Dougherty's physical examination revealed that the complainant's head was swollen and tender, and that she had lacerations on and directly below her knee. Nurse Dougherty observed abrasions on the complainant's genitals, blood coming from her cervix, and redness to the perineum. Swabs of the complainant's vaginal, cervical, and perianal areas all tested positive for sperm. Using a bucal [sic] swab collected from [appellant], Lynn Haimowitz from the Philadelphia DNA Laboratory concluded that the complainant's perianal swabs tested positive for the presence of [appellant's] sperm.

At approximately 12:45 A.M., SEPTA Police Officer Darrell James stopped [appellant] at the Walnut-Locust Street train concourse in response to flash information he received over police radio. From [appellant] he recovered a cell phone (later identified as the complainant's), $45.00, and what he believed to be cocaine. The substance recovered ultimately tested negative for the presence of a controlled substance and narcotics.

Trial court opinion, 11/6/15 at 2-5 (citations to notes of testimony omitted).

The trial court set forth the following procedural history:

> On April 10, 2014, a jury found [appellant] guilty of rape, involuntary deviate sexual intercourse ("IDSI"), robbery, sexual assault, and kidnapping. The court deferred sentencing for a pre-sentence investigation and a Megan's Law[2] assessment by the Sexual Offenders Assessment Board (["SOAB"]). SOAB member Barry Zakireh, Ph.D. issued a report on July 7, 2014 [] concluding that [appellant] meets the statutory criteria for classification as a sexually violent predator ("SVP"). Following a May 15, 2015 hearing, the court found [appellant] to be an SVP and sentenced him to an aggregate term of twenty to forty years.[Footnote 7] [Appellant] filed a post-sentence motion on May 21, 2015, which the court denied without a hearing on June 12, 2015. On June 16, 2015, [appellant] filed this appeal.

> > [Footnote 7] The court sentenced [appellant] to consecutive terms of ten to twenty years on the rape and IDSI convictions. On the robbery and kidnapping convictions, the court sentenced [appellant] to ten to twenty year terms, both to run concurrent with the rape sentence.

*Id.* at 1-2 (footnotes 1-6 omitted).

Appellant raises the following issue for our review:

> Was not the verdict so contrary to the weight of the evidence as to shock one's sense of justice and a new trial should be awarded?

Appellant's brief at 3.

---

[2] Sex Offender Registration and Notification Act, 42 Pa.C.S.A. § 9791, *et seq.*

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

. . . .

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

. . . .

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013) (citations and quotation marks omitted). "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2013).

Here, appellant complains about "various discrepancies in the complainant's testimony," including the number of alcoholic beverages she

consumed prior to the rape, the exact manner in which appellant maneuvered her to the rape site, the precise location of the rape, the items appellant took from her pocketbook, and the reason why she failed to ask for help when she allegedly had the opportunity. (Appellant's brief at 7-9, 12-13.)

We decline appellant's invitation to assess the complainant's credibility and reweigh the evidence. The jury, as fact-finder, had the duty to determine the credibility of the testimony and evidence presented at trial. *Talbert*, 129 A.3d at 546 (citation omitted). Appellate courts cannot and do not substitute their judgment for that of the fact-finder. *See id.* Here, a jury of appellant's peers found complainant credible. After carefully reviewing the record, we conclude that the jury's verdict was not so contrary to the evidence that it shocks the conscience of this court. Rather, our review of the record supports our conclusion that the trial court properly exercised its discretion in denying appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016

- 7 -