J-S07001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DAVID BROOKS | |
| Appellant | No. 972 MDA 2016 |

Appeal from the Judgment of Sentence March 22, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003977-2014

BEFORE: BOWES, LAZARUS, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 10, 2017**

David Brooks appeals from the March 22, 2016 judgment of sentence of life imprisonment, a consecutive term of twenty-five to fifty years imprisonment, and a concurrent term of imprisonment of ten to twenty years, which was imposed following his conviction of rape by forcible compulsion, corruption of minors, and unlawful contact or communication with a minor. His sole challenge is that the jury verdict is against the weight of the evidence. We remand the record to the trial court for the preparation of a Pa.R.A.P. 1925(a) opinion addressing the weight of the evidence with the benefit of the notes of testimony from trial.

Appellant was charged with rape, attempted rape, sexual assault, attempted sexual assault, corruption of minors and unlawful contact or

communication with a minor based on events that occurred the morning of June 5, 2014. The following facts were adduced at the jury trial. The complainant, a sixteen-year-old female, lived with her mother and stepfather, Appellant herein. That morning, her mother had already left for work as was customary and the complainant was getting ready to go to school. She put on her bra and underwear and a pink robe and went downstairs to the basement to get clothes out of the dryer that she intended to wear that day. While she was in the basement, Appellant grabbed her from behind, restrained her arms, tackled her to the ground and got on top of her. She started screaming and told him to get off her, but he covered her mouth and ripped off her panties. She struggled, but she was no match for the 210-pound Appellant. The complainant begged him not to take her virginity, and threatened to commit suicide if he did this to her. She reached over and grabbed a speaker cable and tried to wrap it around Appellant's neck, but her efforts failed. According to the complainant, he tried to penetrate her two times but "was only able to get the head of his penis into the entrance of her vagina[,]" not full penetration. N.T., 1/12-13/16, at 90. When she was on her back, Appellant said, "I've been looking at you for a long time." *Id*. at 93.

Appellant dragged her to another area of the basement where he picked up Vaseline, and then, while attempting to return to the area of the pool table, complainant lost her footing and they fell to their knees.

Appellant lost his grip, she elbowed him in the chest, and she ran for the stairway. Appellant grabbed her by the waist and tried to pull her back. She reached for a steam cleaner, grabbed the handle and tried to hit him with it. Appellant released his grip and she ran up the stairs and out of the house.

A neighbor, Michelle Green, heard pleas for help and looked outside. She saw the complainant standing in the street calling for help, wearing only a bra and a headscarf, with blood running down her legs. Ms. Green assisted the young girl into her house. The complainant told her that her stepfather tried to rape her. Ms. Green's spouse called 911, her adult daughter provided sweat pants and a shirt for the complainant to wear, and Ms. Green provided a phone so the complainant could call her mother. Before police and her mother arrived, the complainant told Ms. Green what had happened. She was hysterical.

Investigation at the scene by Penbrook Police officers revealed blood on the floor of the kitchen, a pink robe on the steps, a steamer mop in two pieces, and a shirt, sanitary napkin and panties on the floor near the pool table in the basement. The victim was taken to the hospital and a rape kit was utilized to obtain evidence of the sexual assault.

At 11:05 p.m. that night, Officer Jesse Foltz responded to a 911 call regarding a disturbance at 3011 George Street. He was aware that there was an arrest warrant for Appellant and that Appellant was associated with

that address. A man invited the officer into the house and advised him that Appellant was in the basement. The officer told Appellant to come upstairs, and, as he did so, family members of the victim berated him for assaulting and raping the victim. Appellant responded, "I know I f__ed up, I'm sorry." *Id*. at 131. As the officer was cuffing him, Appellant asked that he not tighten the cuffs as he had tried to cut his wrists.

During the trial, the jury heard from a DNA expert that the vaginal sample from the victim contained sperm cells and that Appellant could not be excluded as the major contributor to the sample. *Id*. at 226. The odds of someone else in the general population having that same profile was one in seven trillion, more than the world's population, and the highest and strongest statistic that is reported from DNA testing. *Id*. at 232. In addition, telephone calls from Appellant to the victim's mother were played for the jury. In one call, Appellant told her that he would plead guilty to everything; in another, he said that the drugs made him do it and that he was overcome by a demon.

Appellant waived his right to counsel and represented himself at trial with the assistance of stand-by counsel. His own testimony was the only evidence he offered on his own behalf. He maintained that the complainant was lying, he did not rape her, and she manufactured the story because she was biased against him.

The jury found Appellant guilty of rape, corruption of minors, and unlawful contact or communication with a minor. Sentencing was deferred for ninety days at the Commonwealth's request to allow for an evaluation from the Sexual Offender Assessment Board ("SOAB") and a pre-sentence investigation.

On March 22, 2016, Appellant appeared *pro se* at sentencing but advised the court that he wanted his stand-by counsel to represent him on appeal. The Commonwealth represented to the court that it notified Appellant it would be seeking mandatories for a second crime of sexual violence pursuant to 42 Pa.C.S. § 9718.1 and for a third crime of violence pursuant to § 9714, and provided the certified records to establish the application of the mandatories. Although the SOAB concluded there was not enough evidence to classify Appellant as a sexually violent predator under 42 Pa.C.S. § 9799.24, the Commonwealth pointed out that Appellant previously had been convicted of sexual assault for grabbing a woman from behind on the street, dragging her into his home, and sexually assaulting her. In light of the fact that he had shown no remorse, the Commonwealth asked for a life sentence for society's protection.

Appellant told the court that, during his thirty-year criminal history, he had been battling severe drug and alcohol addiction. He had nine years of sobriety during which he worked, was active in his church, and engaged in community service. He maintained that he was innocent of the crimes. The

court explained that Appellant had forfeited his right to be a member of the community due to his savage and violent past. Finding that he was beyond rehabilitation, the court stated that its only recourse was life imprisonment.

Appellant filed a timely post-sentence motion on March 29, 2016 requesting that his sentence be vacated and a new trial granted as the verdict was against the weight of the evidence. The trial court denied the motion on April 22, 2016, and Appellant filed a *pro se* notice of appeal on June 2, 2016.[1] Counsel filed an unopposed motion to file a notice of appeal out of time on Appellant's behalf on June 9, 2016, filed an appeal that same day, and the court granted the motion on June 17, 2016. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, and the trial court issued a Rule 1925(a) opinion stating that it could not address the sufficiency and weight of the evidence arguments raised in the statement as Appellant failed to order the trial transcripts. Appellant filed a petition for transcripts on August 2, 2016, which was granted, and the certified record has been supplemented with those documents.

Appellant's only issue on appeal is, "Did the trial court commit reversible error when it allowed the verdict to stand as the finding of guilt

---

[1] That appeal was dismissed as duplicative by this Court on August 3, 2016.

was against the greater weight of the evidence presented at trial?" Appellant's brief at 4 (unnecessary capitalization omitted).

The law is settled that "a weight of the evidence claim is primarily addressed to the discretion of the judge who presided at trial. The trial court should grant a new trial on this basis "only in truly extraordinary circumstances, *i.e.*, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Id***. at 1148-1149 (quoting ***Armbruster v. Horowitz***, 813 A.2d 698, 703 (Pa. 2002)).

Our standard of review is distinct from that of the trial court. As our High Court reiterated in ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013):

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question   of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Id***. at 432 (emphasis in original) (internal citations omitted) (quoting ***Widmer***, ***supra*** at 753).

Since Appellant preserved his weight challenge in a post-sentence motion and petitioned to supplement the record with the notes of testimony, we decline to find waiver. Nonetheless, we cannot engage in appellate review of this issue without the trial court's ruling and rationale. For that reason, we remand the record as supplemented to the trial court for its opinion limited to Appellant's weight of the evidence claim.

Case and record remanded. Jurisdiction retained.