J-A22001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MUHAMMAD MUHFOOTH, | |
| Appellant | No. 2207 EDA 2017 |

Appeal from the Judgment of Sentence Entered May 8, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004337-2015

BEFORE:  BENDER, P.J.E., NICHOLS, J., and STEVENS,  P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED NOVEMBER 13, 2018**

Appellant, Muhammad Muhfooth, appeals from the judgment of sentence of 4-8 years' incarceration, and a consecutive term of 3 years' probation, imposed following his conviction for robbery and firearm offenses. Appellant challenges the weight and sufficiency of the evidence supporting his conviction.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

> On March 13, 2015, [Appellant], armed with a gun, robbed … Tommy Le by forcing Le into Le's car and ordering him to turn over his ATM card and drive to a nearby ATM so [Appellant] could withdraw money from the account.  [Appellant] forced [Le] to drive [him] back to his house and threatened to hurt [Le] if he told anyone about the incident.

_____

[*] Former Justice specially assigned to the Superior Court.

[Le] testified that he lived on … Saybrook Avenue in Southwest Philadelphia in March of 2015. He had lived there for fifteen (15) years and [Appellant] had been living across the street for about five (5) months prior to the robbery. [Le] would see [Appellant], who he knew as 'Snoop,' from time to time on the block[.] On March 13, 2015, 'Snoop' forced [Le] to get into the driver's seat of [Le]'s car. [Appellant] then entered the back seat and told [Le] that he would hurt him if he didn't listen. [Appellant] forced [Le] to drive him to a corner store two blocks away and told him: "I'm not letting you out of the car until you give me money" and "[y]ou are not leaving until I get some kind of money." [Le] didn't have any money but had a MasterCard that he had borrowed from a friend,[1] which he handed over to [Appellant]. When they pulled up to the corner store, [Appellant] rolled down his window and passed the card to a male who was standing outside of the store. This male went into the store and returned with about $135.00 in cash, which he handed over to [Appellant], who had remained in the backseat of [Le]'s car.

[1] The friend in question is a 50[-]year-old friend of [Le]'s, named Sura Klam, who was afflicted with cancer and had trouble getting around. [Le] had Klam's Social Security debit card and personal identification number (PIN) because he helps to take care of Klam and uses it to get Klam groceries[.] The card was returned to Klam after the incident[.] Klam had accompanied [Le] to the police station and Southwest Detectives on March 14, 2015[,] but did not give any statements.

[Le] testified that [Appellant] then ordered [Le] to drive him home. When they were parked outside [of Appellant]'s house, [Appellant] told [Le,] "you better not snitch and I'm going to get you if you do" and [Le] saw a black and silver object in [Appellant]'s pants that he believed to be a gun[.] [Appellant] told [Le] that he knew where [he] lived and also threatened to shoot up [Le]'s house. After [Appellant] exited [the] car, Le drove to a Cambodian Temple to return his friend's MasterCard and tell him what happened.

The next day, [Le] went to a police station in South Philadelphia to report the incident[.] [Le] did not go to the police station a block from his house for fear that [Appellant] would see him going to the police. For the same reason, [Le] did not call the police to come to his house. In his statement to Officer Hasan, [Le] described [the robber] as "30, black male, 'Snoop,' possible

address, 2212 South 66th Street, with approximate height, weight as 6'1", 250 pounds, beard, multiple tattoos on face, dark hoodie, gray vest." The same day he gave a statement to Officer Hasan, [Le] also went to Southwest Detectives. In his statement to Southwest Detectives, [Le] stated that he saw [Appellant]'s "big, black handgun" but it remained in [Appellant]'s pants at the beginning of their interaction[.] When shown an array of photos at Southwest Detectives, [Le] identified [Appellant] as the male who robbed him.

Philadelphia Police Officer Khalil Nock of the 12th Police District testified that he transported [Le] from the 17th District to Southwest Detectives on March 14, 2015. Officer Nock testified that he knew that [Le] was talking about [Appellant] from the description [he] gave of him on their ride over to Southwest Detectives. Officer Nock knew this because he walked a foot beat in the area where [Le] and [Appellant] lived and had seen [Appellant] previously. Officer Nock gave this information to Detective Daniel Blount, who had been assigned to this case.

[Le] identified [Appellant] in the photo array as the male who robbed him the night before. After [Le]'s identification, Detective … Blount prepared a search warrant for [Appellant]'s house at 2212 South 66th Street.

Det. Blount testified that he was present when the search warrant was executed on the property at 2212 South 66th Street on March 15, 2015, less than twelve hours after [Le] identified [Appellant]. [Appellant], arrested during the search, was present with other members of his family. Recovered during the search were a blue zip-up cotton sweat jacket, which [Le] had described [Appellant] as wearing at the time of the incident, and a letter addressed to [Appellant] at 2212 South 66th Street, confirming his address.

The Commonwealth and defense counsel stipulated to the fact that [Appellant] had a prior conviction for an enumerated offense for more than sixty (60) days prior to this offense, which rendered him ineligible to possess a firearm under § 6105 of the Uniform Firearms Act. Lastly, they stipulated to the fact that [Appellant] did not have a valid and lawfully issued license to carry in Pennsylvania, nor did he have a valid sportsman's permit.

Trial Court Opinion (TCO), 10/16/17, at 2-5 (citations omitted).

Following a non-jury trial held on February 1, 2017, the trial court convicted Appellant of Robbery, 18 Pa.C.S. § 3701(a)(1); possession of a firearm prohibited, 18 Pa.C.S. § 6105; carrying a firearm without a license, 18 Pa.C.S. § 6106; carrying a firearm in public, 18 Pa.C.S. § 6108; possession of an instrument of crime (PIC), 18 Pa.C.S. § 907; and false imprisonment, 18 Pa.C.S. § 2903. On May 8, 2017, the court sentenced Appellant to 4-8 years' incarceration for robbery, and to a consecutive term of 3 years' probation for possession of a firearm prohibited. On May 18, 2017, Appellant filed a timely post-sentence motion challenging the weight and sufficiency of the evidence supporting his conviction. The trial court denied Appellant's post-sentence motion on June 14, 2017.

Appellant filed a timely notice of appeal on July 6, 2017. He filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on September 4, 2017. The trial court issued its Rule 1925(a) opinion on October 16, 2017. Appellant now presents the following questions for our review:

> A. Did the [trial] court improperly convict Appellant … where there was insufficient evidence of: (1) his intent to take movable property by threat of force in support of the robbery conviction; (2) his possession of an illegal firearm; and (3) his intent to knowingly restrain another so as to substantially interfere with their liberty in support of the false imprisonment conviction[?]
>
> B. Did the [trial] court improperly convict [A]ppellant … where the verdict was contrary to the weight of the evidence at trial?

Appellant's Brief at 2 (unnecessary capitalization omitted).

Appellant's first claim is a three-part challenge to the sufficiency of evidence. Initially, we must address the Commonwealth's assertion that

Appellant waived his sufficiency challenge(s) by failing to articulate in his Rule 1925(b) statement which elements of which crimes he intended to challenge on direct appeal. **See Commonwealth v. Williams**, 959 A.2d 1252, 1256-58 (Pa. Super. 2008) (holding that the failure to articulate a sufficiency claim with specificity in a Rule 1925(b) statement is grounds for waiver).

In Appellant's Rule 1925(b) statement, his sufficiency claim was presented as follows:

> [T]he evidence presented by the Commonwealth was legally insufficient to sustain a verdict of guilty as to any of the charges. The testimony of the complaining witness was incredible and uncorroborated by any credible and/or unbiased evidence. The testimony of this complaining witness was biased and/or was not credible due to his prior convictions, pending criminal matters, and testimonial inconsistencies. The Commonwealth failed to present any physical or scientific evidence that corroborated his account of the incident.

Appellant's Rule 1925(b) Statement, 9/4/17, at 2 ¶ 6 (unnumbered pages).

Thus, Appellant's Rule 1925(b) statement indicated that the nature of his challenge to the sufficiency of the evidence concerned the credibility of the victim.[1] In his brief, however, Appellant argues that the Commonwealth failed to prove specific elements of the crimes at issue. **See** Appellant's Brief at 8-10 (challenging the sufficiency of the evidence presented to demonstrate the victim's fear of immediate serious bodily injury pursuant to Section

---

[1] Such a claim is, in any event, a challenge to the weight, not the sufficiency, of the evidence. "A sufficiency of the evidence review … does not include an assessment of the credibility of the testimony offered by the Commonwealth. Such a claim is more properly characterized as a weight of the evidence challenge." **Commonwealth v. Wilson**, 825 A.2d 710, 713–14 (Pa. Super. 2003) (citation omitted).

3701(a)(1)(ii)); *id.* at 10-12 (arguing a lack of sufficient evidence to demonstrate Appellant's possession of a firearm for purposes of his multiple firearm violations and PIC); *id.* at 12-13 (claiming insufficient evidence that Appellant interfered with the victim's liberty pursuant to Section 2903(a)). Moreover, in his post-sentence motion, Appellant raised the sufficiency of the evidence in an even more generic fashion. *See* Appellant's Post-Sentence Motion, 5/18/17, at 2 ¶ 4 ("[T]he evidence presented by the Commonwealth was legally insufficient to sustain a verdict of guilty as to any of the charges.") (unnumbered pages). Thus, Appellant's post-sentence motion could not have aided the trial court in determining the specific sufficiency claims Appellant intended to raise on appeal.

Accordingly, we agree with the Commonwealth that Appellant failed to raise his sufficiency claim(s) in his Rule 1925(b) statement with adequate specificity. Indeed, Appellant failed to raise any sufficiency claim at all in his Rule 1925(b) statement. *See* n.1, *supra*. Accordingly, we are compelled to deem Appellant's sufficiency claims waived. "Any issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).

Thus, we now turn to address Appellant's weight-of-the-evidence claim. "When reviewing a challenge to the weight of the evidence, the verdict may be reversed [by the trial court] only if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Davidson*, 860 A.2d 575, 582 (Pa. Super. 2004). This Court applies the following standard of review to

a claim that the trial court erred in finding that a verdict was or was not against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Appellant's argument in support of his weight-of-the-evidence claim, in its entirety, is as follows:

> The complainant[, Le,] told the trial court on several occasions that he exaggerated his allegations. He stated on several occasions during trial that he only "assumed" Appellant had a gun. Upon repeated questioning, he stated that he neither saw a gun nor was a gun or any other weapon displayed to him[.] He admitted that he lied to detectives about how the incident began. Further, the complainant admitted to having a faulty memory due to anxiety and the medication he takes as a result of his condition.
>
> Additionally, there was no evidence offered to corroborate the complainant's inconsistent statements. Law enforcement did not recover a gun, a bank card, any bank records, or any other evidence that one would expect to recover had the complainant's story been true. What was supported by competent, credible evidence was that the complainant had multiple and recent convictions for *crimen falsi* offenses. As a result, the trial court improperly rejected Appellant['s] weight of the evidence claim.

Appellant's Brief at 14-15.

At the outset, we acknowledge that the victim in this case was less than ideal as a witness for the Commonwealth. His testimony was inconsistent at times. However, while Appellant attributes these deficiencies exclusively to fabrication, they may also simply reflect the victim's nervousness and fear, both at the time of the alleged robbery and during his in-court testimony.

Moreover, we find that Appellant himself exaggerates the record in this case in making his weight-of-the-evidence claim. Appellant asserts that the victim "neither saw a gun nor was a gun or any other weapon displayed to him." *Id.* at 14. Appellant does not cite to where in the record the victim made such a statement. Our review of the record indicates that the victim did

- 8 -

state that he did not see a gun when the robbery began; at that time, he had only "assumed" that Appellant was armed. *See* N.T., 2/1/17, at 23. However, the victim also testified that he saw what he believed to be a gun tucked in Appellant's pants later on, when the victim was returning Appellant to his house. *Id.* at 22-23. At that time, he saw the color of the gun, "and the trigger[.]" *Id.* at 22. Accordingly, we reject Appellant's misleading characterization of the record, as the victim did, in fact, testify that he observed a gun in Appellant's possession.

Appellant also claims that the victim admitted to lying when he initially contacted police about the incident. Appellant's Brief at 14. Again, Appellant provided no citation to the record where this supposed admission occurred. At worst, the victim admitted on several occasions during cross-examination there were some inconsistencies between his initial statements to police and his trial testimony. The existence of inconsistencies in a complainant's testimony rarely will shock the conscience, because some degree of inconsistency is ubiquitous in trial testimony. Here, we are not confronted with completely incompatible accounts from the Commonwealth's sole witness, such as would be the case if the victim had reported the presence of a gun, and then refuted that claim entirely during his testimony. Instead, the inconsistency here involves *when* the victim first observed the gun during the traumatic experience of a robbery. Any number of reasons could account for this inconsistency beyond fabrication, many of which are completely compatible with the witness's credibility. A verdict based on these

inconsistencies, on their face, does not shock the conscience and, therefore, we ascertain no abuse of discretion in the trial court's determination that the victim's testimony was credible and supported the verdict.

Appellant also complains that there was no corroborating evidence to support the verdict. He aruges that "[l]aw enforcement did not recover a gun, a bank card, any bank records, or any other evidence that one would expect to recover had the complainant's story been true." Appellant's Brief at 15. Appellant's expectations are greater than our own. While such evidence would have been helpful to the Commonwealth, it was not necessary and, at the same time, there was no evidence tending to contradict the victim's account. Thus, this case turned, exclusively, on the credibility of the victim. Mandating to the trial court a decision that testimony is never credible in the absence of corroborating evidence has no basis in existing law.

Moreover, as this Court has stated previously, a "new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (citation omitted). It is certainly possible that a different judge, given the same facts, would have found the credibility of the victim's testimony wanting. However, recognition of that possibility is not grounds for a new trial. *See id.* Instead, under our standard of review, we must evaluate whether no reasonable judge could have deemed the witness credible based on the facts of this case, which is a prohibitively high standard. We cannot reach such a

conclusion under the facts of this case and, therefore, we must conclude that the trial court did not abuse its discretion in denying Appellant's post-sentence motion challenging the weight of the evidence.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/18