J-S75029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      :                PENNSYLVANIA
                                                      :

               v.                                               :
                                                      :

KEVIN WILSON                                :
                                                      :

              Appellant                        :        No. 2197 EDA 2017

Appeal from the PCRA Order June 22, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012880-2010

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                   **FILED MAY 29, 2019**

Appellant Kevin Wilson appeals from the order dismissing his timely first Post Conviction Relief Act[1] (PCRA) petition as meritless. Appellant argues that the PCRA court erred in dismissing his claims that trial counsel was ineffective for failing to file a post-sentence motion challenging the weight of the evidence. Appellant also asserts that trial counsel was ineffective during cross-examination of witnesses. We affirm.

This Court previously adopted the following summary of the facts underlying Appellant's convictions:

> At 12:30 a.m. on July 12, 2008, the Complainant (Terrance Savage) sat in the driver's side seat of his motor vehicle and conversed with a friend through the open front passenger window. After a short conversation, the Complainant's friend left. Approximately ten seconds later, Appellant approached the front driver's side window, leaned in the open window, and held a black

---

[1] 42 Pa.C.S. §§ 9541-9456.

gun against the Complainant's abdomen. Appellant told the Complainant to "give everything up." With his left hand, Appellant took the Complainant's chain, watch, and one thousand dollars. Appellant then told the Complainant his name. The Complainant testified that Appellant said "his name was Scar Face Kev and if I wanted any trouble, ask about him." After Appellant gave his name, he shot the Complainant in the stomach, and walked away.

While the robbery was occurring, Kendall McGill was approximately 40 feet away playing dice with other males. McGill saw Appellant at the Complainant's car. Approximately a minute later, McGill heard a gunshot and saw Appellant quickly walk away from Complainant's car as he put a black gun in his left waistband with his right hand. Appellant then walked past McGill and around the corner.

After Appellant walked around the corner, the Complainant started driving to Temple University Hospital. While driving, the Complainant called his mother and told her that he had been shot. When the Complainant arrived at the emergency room, doctors performed surgery.

After approximately four days, the Complainant left the hospital without permission because he feared for his safety. After leaving the hospital, the Complainant went home. However, the Complainant still did not tell the police that Appellant had shot him because he feared for his life and did not want to be labeled a rat. However, while the Complainant was home recovering, he informed his mother and friends that Appellant had shot him. Three months later, the Complainant finally told the police who had shot him.

In March 2010, detectives attempted to arrest Appellant but they could not locate him. On April 9, 2010, the Commonwealth learned that Appellant was in custody at State Correctional Institution (SCI) Greene. In April 2010, Officer Timothy Simpson of the East Division Warrant Unit faxed a writ to SCI Greene to bring Appellant to court. However, Appellant was not brought down. Although the Commonwealth faxed additional requests on May 4, 2010, May 21, 2010, and June 2, 2010, Appellant was still not brought down. Finally, the Commonwealth paid approximately $2,000.00 to extradite Appellant to Philadelphia. On June 8, 2010, Appellant was extradited and arrested.

***Commonwealth v. Wilson***, 59 EDA 2013, at 1-2 (Pa. Super. filed Sept. 22, 2014) (unpublished mem.) (quoting Trial Ct. Op., 9/25/13, at 2-4) (brackets omitted).

Appellant was charged with attempted murder, aggravated assault, robbery, possession of firearms prohibited, and related offenses,[2] and proceeded to a jury trial. At trial, the Commonwealth, in relevant part, called Complainant[3] and McGill, whose testimony was summarized above as part of our decision in Appellant's direct appeal.

We add that during the direct examinations of Complainant and McGill, the Commonwealth elicited testimony that Complainant and McGill first gave formal statements implicating Appellant after being charged with federal crimes and as part of plea negotiations with federal authorities. The Commonwealth also introduced McGill's first statement to federal authorities. According to McGill's first statement, he did not see Appellant with a gun, but saw Appellant place an object into his waistband that "had to be a gun." N.T.,

---

[2] 18 Pa.C.S. §§ 901(a), 2502; 18 Pa.C.S. §§ 2702(a), 3701(a)(ii), 6105(a)(1), and 907(a), respectively.

[3] Furthermore, while Complainant was testifying, the trial court excused the jury for a sidebar conference, but Complainant remained on the stand and Appellant remained in court. During the conference, Appellant allegedly looked at Complainant, mouthed the words "I'm going to kill you," and made a gesture as if he was slashing his neck three times. N.T., 8/23/12, at 109. The Commonwealth subsequently called a deputy sheriff who was standing behind Appellant at that time to testify at trial regarding the gesture made by Appellant. The trial court also issued a consciousness of guilt charge.

8/24/12, at 74. McGill, however, gave a subsequent statement to federal authorities indicating that Appellant had a black gun. *Id.* at 76-77.

During cross-examination of Complainant and McGill, Appellant's trial counsel noted that Complainant and McGill did not implicate Appellant immediately after the shooting. Trial counsel's examination emphasized that the federal charges were brought against Complainant and McGill after the shooting. Trial counsel further highlighted that Complainant and McGill were testifying against Appellant under cooperation agreements with federal authorities before being sentenced for their federal charges. In so doing, trial counsel confronted Complainant and McGill with their possible sentencing exposures for the federal offenses and indicated that they could receive downward departures from the sentencing guidelines based on their cooperation. Trial counsel also noted that Complainant and McGill were cellmates while in federal custody.

Trial counsel did not cross-examine McGill about the discrepancy between his first and subsequent statements regarding the object Appellant placed in his waistband after the shooting. However, trial counsel did confront McGill with another discrepancy between his first and subsequent statements, noting that McGill initially stated that he heard a "bang" that sounded like gunshots, but later indicated that he heard gunshots. *Id.* at 115-16.

After Appellant's cross-examination of Complainant, the Commonwealth called Complainant's mother to the stand. Complainant's mother testified that

a couple of weeks after the shooting, she overheard Complainant on the phone stating that the shooter identified himself as "Scar Face Kev."[4]

At the conclusion of trial, the jury found Appellant guilty of all charges.[5] The trial court sentenced Appellant to an aggregate term of twenty to forty years' imprisonment and a consecutive fifteen years' probation. Trial counsel did not file post-sentence motions on Appellant's behalf, but took a direct appeal to this Court.

On September 22, 2014, this Court affirmed the judgment of sentence. **See Wilson**, 59 EDA 2013, at 1. Appellant did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

Appellant timely filed a *pro se* PCRA petition that was postmarked on January 21, 2015. The PCRA court appointed present counsel,[6] who filed an amended petition and memorandum of law on August 3, 2016. Appellant claimed trial counsel was ineffective for failing to (1) preserve a weight of the evidence challenge in the trial court and (2) cross-examine Complainant and McGill with evidence that would have impeached their testimony and demonstrated their bias.

_____

[4] As discussed in Appellant's direct appeal, Complainant's mother's testimony was admitted as a prior consistent statement, and the trial court issued a cautionary instruction directing the jury not to consider the statement for the truth of the matter asserted. **Wilson**, 59 EDA 2013, at 13-21.

[5] The jury specifically found that the attempt at murder resulted in serious bodily injury to Complainant.

[6] The Honorable Glynnis Hill presided over the trial, sentencing, and the instant PCRA proceedings.

Alternatively, Appellant claimed that trial counsel was ineffective for emphasizing that Complainant testified against him to obtain reduced federal prison sentences. According to Appellant, such testimony opened the door for the Commonwealth to admit testimony about Complainant's prior consistent statement identifying Appellant as the shooter.

Appellant also asserted that trial counsel should have obtained Complainant's phone records to show Complainant was "selling drugs and committing other crimes while in prison." Mem. of Law, 8/3/16, at 13. Appellant suggested that the Commonwealth's failure to disclose Complainant's phone records constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

On December 13, 2016, the Commonwealth filed a motion to dismiss Appellant's PCRA petition asserting that Appellant's claims failed to state a basis for relief. On May 5, 2017, the PCRA court issued a Pa.R.A.P. 907 notice of its intent to dismiss Appellant's petition. Appellant did not respond, and the court dismissed Appellant's petition on June 22, 2017.

Appellant filed a timely notice of appeal and complied with the PCRA court's order to file and serve a Pa.R.A.P. 1925(b) statement. The court filed a responsive opinion concluding that Appellant failed to demonstrate prejudice from trial counsel's failure to seek a new trial based on the weight of the evidence. The court further determined that the record did not support Appellant's claims that trial counsel was ineffective during cross-examination of the Commonwealth's witnesses and that Appellant failed to establish his

- 6 -

alternative claims challenging the adequacy of trial counsel's cross examination.

Appellant now presents the following issues for review:

[1.] Whether the [PCRA c]ourt erred in denying the Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding Trial Counsel's ineffectiveness.

[2.] Whether the [PCRA c]ourt erred in not granting relief on the PCRA petition alleging Counsel was ineffective.

Appellant's Brief at 8.

Appellant presents three arguments in his brief: (1) the PCRA court erred in finding that there was no basis for a new trial based on the weight of the evidence, *see id.* at 18-20; (2) the PCRA court erred in finding that trial counsel conducted adequate cross-examination of the Commonwealth's witnesses, *see id.* at 20-22; and (3) the PCRA court erred in declining to hold an evidentiary hearing, *see id.* at 15-16.[7] Before addressing these arguments in detail, we set forth the general principles governing our review.

This Court's review from the dismissal of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted).

---

[7] We address Appellant's arguments in a different order than presented in his brief.

To establish a claim of ineffective assistance of counsel, a PCRA petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). The burden is on the petitioner to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* (citation omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

The Pennsylvania Supreme Court has stated that "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). Moreover, a petitioner cannot rely on mere conjecture and speculation to establish a claim of ineffectiveness. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1216 (Pa. 2006)

A PCRA petitioner is not automatically entitled to an evidentiary hearing. *See Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa. Super. 2015).

"[T]he PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." *Id.* (citation and quotation marks omitted)  On appeal, we "examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Id.* (citation omitted).

Appellant first argues that the PCRA court erred in dismissing his claim that trial counsel should have sought a new trial based on the weight of the evidence.  Appellant's Brief at 18.  He notes:

> The Commonwealth's case depended heavily upon the testimony of [Complainant] and Kendall McGill.  There was no physical evidence that tied Appellant to the offense.  [Complainant] made a deal with the government so that he could get a lighter sentence. He had numerous arrests. And he was subsequently not a credible witness.  Likewise, . . . McGill's testimony regarding the existence of a handgun was inconsistent at trial as well.  This witness's first statement declared that he did not see the Appellant with a gun but saw him put an object that "had to be a gun" to his waist. Then, inconsistent with this, the second statement declared that he saw a portion of the gun.

> Due to the lack of credibility of the Commonwealth witnesses who were all trying to make deals to save themselves, a fact that prior counsel failed to explore adequately on cross-examination, the evidence preponderates sufficiently heavily against Appellant's conviction and suggests that a serious miscarriage of justice may have occurred.  There is little evidence in the present case supporting the verdict reached by the jury.

*Id.* at 19.

It is well settled that a challenge to the weight of the evidence must be preserved in the trial court. *See* Pa.R.Crim.P. 607. In the context of an ineffective assistance of counsel claim, the failure to file a post-sentence motion does not give rise to a presumption of prejudice. *See Commonwealth v. Reaves*, 923 A.2d 1119, 1131-32 (Pa. 2007). Therefore, a petitioner must establish that there is a reasonable probability that a motion would have led to a different outcome. *See Reaves*, 923 A.2d at 1131.

The Pennsylvania Supreme Court has described a motion for a new trial based on a challenge to the weight of the evidence as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> > Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for

- 10 -

granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations omitted) emphasis in original).

Instantly, the PCRA court determined that there was no reasonable probability that Appellant would have been entitled to a new trial if trial counsel challenged the weight of the evidence. As noted by the judge, who presided at both the trial and the instant PCRA proceeding, the verdict did not shock the conscience. PCRA Ct. Op., 1/16/18, at 3. Both Complainant and McGill positively identified Appellant as the shooter. Furthermore, Appellant presented ample testimony attempting to impeach the credibility of Complainant and McGill.

Based on the foregoing, we conclude that the PCRA court properly concluded that Appellant failed to establish prejudice. The impeachment evidence against Complainant and McGill was not of such greater weight that to ignore it or to give it equal weight constituted a denial of justice. ***See Clay***, 64 A.3d at 1054-55. Therefore, even if trial counsel had properly preserved a challenge to the weight of the evidence in the direct appeal, we discern no basis to conclude that Appellant would have been entitled to a new trial. ***See Reaves***, 923 A.2d at 1131-32. Accordingly, Appellant's first argument fails. ***See Ousley***, 21 A.3d at 1242.

Appellant next argues that the PCRA court erred in concluding that trial counsel's cross-examination of Complainant and McGill was inadequate. Appellant presents several contentions in support of this argument.

First, Appellant contends that trial counsel "did not thoroughly cross examine [McGill or Complainant] to show they were cooperating to get a reduced sentence on an unrelated charge" or failed to reveal their biases. However, as noted by the PCRA court, the record contradicts this contention.

Instantly, trial counsel repeatedly emphasized that Complainant and McGill first gave formal statements implicating Appellant after being charged with federal offenses. *See* N.T., 8/23/12, at 122, 136; N.T., 8/24/12, at 114. Trial counsel highlighted the possible sentences that McGill and Complainant faced on those charges, and the possibility that they could, and hope to, receive a recommendation for a downward deviation for their cooperation. *See* N.T., 8/23/12, at 70 (indicating that Complainant was facing a maximum sentence of life), 76 (indicating that the federal authorities could file a motion for a downward departure based on Complainant's cooperation); N.T., 8/24/12, at 97, 109, 119. Further, as noted by the PCRA court, trial counsel attempted to show that Complainant and McGill had been promised favorable treatment if they testified against Appellant, but they denied any promises of leniency. *See* PCRA Ct. Op. at 6 (citing N.T., 8/23/12, at 133; N.T., 8/24/12 at 98).

Therefore, Appellant's contention that trial counsel failed to raise Complainant's and McGill's unrelated federal charges during cross-

examination lacks arguable merit. Accordingly, we discern no error in the PCRA court's ruling. **See Daniels**, 963 A.2d at 419; **Ousley**, 21 A.3d at 1242.

Second, Appellant asserts that trial counsel was ineffective for failing to cross-examine McGill using his prior statements to federal authorities. Appellant's Brief at 20. Appellant emphasizes that McGill initially stated that after the shooting, McGill saw Appellant place an object that had to be a gun in his waistband. **Id.** Later, McGill told federal authorities that he saw Appellant put a black gun into waistband. **Id.** Appellant concedes that this discrepancy was raised by the Commonwealth during its direct examination of McGill, but claims that trial counsel should have highlighted the discrepancy during cross-examination. **Id.**

Our review confirms that the Commonwealth raised this discrepancy during direct examination. **See** N.T., 8/24/12, at 74-77. Trial counsel did not question McGill about the fact that he initially told federal authorities that he saw Appellant put an object in his waistband, and later described the object as a black gun. **See id.** at 115-16. However, trial counsel cross-examined McGill regarding a difference between his first and second statements to federal authorities, noting that McGill initially told federal authorities that at the time of the shooting, he heard a "bang." **See id.** Trial counsel elicited McGill's testimony that the two statements were different. **See id.**

Therefore, the jury was aware that McGill provided greater details in his second statement to police. Although trial counsel did not specifically impeach McGill regarding McGill's statements about the object Appellant placed in his

waistband, trial counsel emphasized the differences between McGill's first and second statements. Under the circumstances of this case, we discern no basis to conclude that Appellant established prejudice as a result of trial counsel's failure to cross-examine McGill about his prior statements concerning the gun. Accordingly, no relief is due. *See Ousley*, 21 A.3d at 1242.

Third, Appellant contends that trial counsel was ineffective for cross-examining Complainant about the federal plea agreement. Appellant's Brief at 21-22. According to Appellant, this permitted the Commonwealth to present Complainant's mother to testify that Complainant made a prior consistent statement identifying Appellant as a shooter. *Id.* Additionally, Appellant suggests that trial counsel should have objected to Complainant's mother's testimony, because Complainant stated that he never told his mother who the shooter was. *Id.* at 21-22.

At the outset, we note that this contention directly contradicts Appellant's previous claim that trial counsel failed to demonstrate Complainant's bias based on the federal charges. In any event, Appellant, as petitioner, was required to plead that trial counsel lacked a reasonable basis for his decision, and failed to do so. *See Turetsky*, 925 A.2d at 880

More specifically, Appellant bears the burden of showing a substantially greater possibility of success at trial if trial counsel did not cross-examine Complainant about the federal charges to avoid the possible admission of a prior consistent statement. Instantly, Appellant failed to plead or develop any argument on appeal that trial counsel's decision to impeach Complainant using

- 14 -

the federal charges was unreasonable under the circumstances of this case. Accordingly, we conclude that no relief is due based on Appellant's boilerplate contention. *See Paddy*, 15 A.3d at 443.

Fourth, Appellant contends that trial counsel was ineffective for failing to object to Complainant's mother's testimony regarding Complainant's prior consistent statement. Appellant's Brief at 21-22. Appellant asserts that trial counsel should have objected because Complainant testified that he did not tell his mother who shot him. *Id.*

We note that this contention was undeveloped in Appellant's amended PCRA petition and on appeal. *See Paddy*, 15 A.3d at 443. On appeal, Appellant does not refer to any point in the record indicating that Complainant stated he did **not** tell his mother who shot him. *See* Pa.R.A.P. 2119(c). Moreover, Appellant fails to cite any case law to show that his proposed objection concerned the admissibility, rather than the weight of the prior consistent statement.[8] Therefore, Appellant has waived consideration of this claim. *See Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009).

Fifth, Appellant contends that trial counsel should have cross-examined Complainant using phone records to demonstrate that Complainant was "still selling drugs and committing other crimes while in prison." Appellant's Brief

---

[8] We add that Complainant's mother testified that she overheard Complainant indicating that the shooter identified himself as "Scar Face Kev" during a phone conversation with an unidentified third party. N.T., 8/24/12, at 20. Sometime after overhearing this conversation, Complainant's mother stated that Complainant told her about the shooter, when she "questioned him [about] who Scar Face Kev was." *Id.* at 20.

at 21. Alternatively, Appellant asserts that the Commonwealth violated **Brady** by failing to disclose Complainant's phone records. **Id.**

Instantly, the PCRA court rejected this contention, noting that Appellant failed to establish how such evidence would have been relevant. PCRA Ct. Op. at 8. The court also concluded that such evidence would have been inadmissible character evidence. **Id.**

Our review reveals that Appellant offered no corroboration for his assertion that Complainant's phone records would contain evidence that Complainant was engaged in drug trafficking while in prison. **Spotz**, 896 A.2d at 1216 (noting that mere conjecture and speculation that favorable evidence existed did not meet a PCRA petitioner's burden of proof). Accordingly, Appellant's contention that the PCRA court erred in dismissing his contention based on Complainant's phone records fails. **See id.**

In his final argument, Appellant asserts that the PCRA court erred in dismissing his petition without a hearing. However, in light of our review of Appellant's substantive claims, we agree with the PCRA court that Appellant's petition did not raise genuine issues of fact as to his claims. Therefore, the PCRA court did not abuse its discretion in declining to hold a hearing. **Smith**, 121 A.3d at 1052.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/29/19