J-S38044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :   IN THE SUPERIOR COURT OF
                                               :            PENNSYLVANIA
                                   :
                    v.                       :
                                     :
                                     :
COREY ORLANDO DELOST            :
                                     :
             Appellant          :     No. 578 WDA 2021

Appeal from the Judgment of Sentence Entered December 21, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003826-2018

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:            **FILED: MARCH 25, 2022**

Appellant, Corey Orlando Delost, appeals from the judgment of sentence of two years' probation, payment of costs, and forfeiture of a firearm imposed after his bench trial conviction for terroristic threats.[1]  After careful review, we affirm.

Appellant was charged on July 31, 2018 with a single count of terroristic threats for an incident that occurred that day between Appellant and Leonard Hayden, Jr. (Hayden, Jr.).  Appellant waived his right to a jury trial and was tried at a one-day bench trial on October 19, 2020.  Four witnesses testified for the Commonwealth at this trial, Hayden, Jr., Hayden, Jr.'s former girlfriend

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

Katrina DeLuca, Leonard Hayden, Sr. (Hayden, Sr.), and a police officer who responded to a 911 call from Hayden, Sr. Appellant testified in his own defense.

Hayden, Jr. testified that following an incident with Appellant and two of Appellant's friends when he was at a Scheetz station with DeLuca, he drove home, that a few minutes later, he saw Appellant and Appellant's friends parked near the house, and that they stayed in their vehicle watching the house for about 15 minutes. N.T. Trial at 17-22. Hayden, Jr. testified that he called the police and that Appellant then pulled the vehicle in front of the house. *Id.* at 21-22, 26. Hayden, Jr. testified that he went over to the vehicle and that while he was next to the vehicle, Appellant said to him "I am going to light this mother fucker up" and that he saw that Appellant had his hand on a gun under his leg. *Id.* at 22-23, 26, 41, 44. He understood Appellant's statement to mean that Appellant "was going to shoot my house up" and testified that he felt endangered. *Id.* at 23-24, 26-27. Hayden, Jr. testified that Appellant drove off after he made this statement. *Id.* at 22-24, 26. Hayden, Jr., who was being held in the Westmoreland County Prison on unrelated charges at the time of trial, admitted on cross-examination that he has been convicted of theft-related crimes. *Id.* at 3-4, 40-41.

DeLuca testified that she was with Hayden, Jr. at the Scheetz station and that later that day, when she and Hayden, Jr. were at Hayden, Sr.'s house, where they were living at the time, Appellant and his friends pulled their

vehicle up at the house. N.T. Trial at 47-48, 55. DeLuca testified that Appellant and one of his friends yelled at her, Hayden, Jr., and Hayden, Sr. and that there was a back-and-forth argument between Appellant and his friend and Hayden, Jr. and Hayden, Sr. *Id.* at 55-56. DeLuca testified that during this argument, she heard Appellant say "I am going to light this shit up" and that she was very scared by this because her child and other children were in the house. *Id.* at 56-57, 59-60. DeLuca testified that she could not say whether Appellant had a gun, but that she saw a gun in Appellant's vehicle. *Id.* at 58-59.

Hayden, Sr. testified that he arrived home to find Appellant parked in front of his house and that when he went by Appellant's vehicle to get to his house, he saw a gun in Appellant's hand on Appellant's lap. N.T. Trial at 74-76, 80. Hayden, Sr. testified that he called the police and asked Appellant to leave and that as he walked away to go into his house, Appellant uttered a racial epithet at him. *Id.* at 77-79. Hayden, Sr. testified that when he went back in his house, Appellant was still parked at the house. *Id.* at 80. Hayden, Sr. testified that he did not hear Appellant make any threat. *Id.* at 74, 86. It was stipulated that Hayden, Sr. had convictions for defiant trespass and summary retail theft. *Id.* at 85.

The police officer testified that a bulletin was put out for Appellant's vehicle and that after being notified that it had been found, he came to the scene of the vehicle stop. N.T. Trial at 90-91. The officer testified that

- 3 -

Appellant was the driver of the vehicle and that he found a loaded Smith and Wesson semi-automatic handgun that was registered to Appellant under the driver's seat toward the back of the seat and a second magazine on the rear seat. *Id.* at 91-95.

Appellant testified that he was at the Scheetz station on the day in question with two other people when Hayden, Jr. and Hayden, Jr.'s little brother and another boy were there. N.T. Trial at 99. He testified that DeLuca was not there and that he did not exchange words with Hayden, Jr. *Id.* at 99-100, 106. Appellant testified that Hayden, Jr. followed him for a few blocks after he left the Scheetz and that Hayden, Jr. and Hayden, Sr. later drove by his car honking at him and making an obscene hand gesture. *Id.* at 101. Appellant admitted that after this incident, he parked near Hayden, Sr.'s house. *Id.* at 101-02. Appellant testified that right after he pulled in, Hayden, Sr. boxed him in and came over to his vehicle talking to the police on the phone about Appellant calling Hayden, Sr.'s children a racial epithet. *Id.* at 102. Appellant denied that he made any threat and testified that eight or nine people came out of Hayden, Sr.'s house and that a friend of Hayden, Jr. said to Appellant "I am going to light your shit up." *Id.* at 102, 104. Appellant testified that he couldn't drive away because he was boxed in and that he drove away after Hayden, Sr. backed his car up. *Id.* at 103. Appellant also testified that when he was stopped by the police, he put his gun on the back seat before the police came over to his vehicle. *Id.* at 103-04, 114.

Following the testimony and closing arguments, the trial court found Appellant guilty of terroristic threats, finding that DeLuca was a credible and compelling witness and that Hayden, Jr. and Hayden, Sr. were also credible, and concluding that some of Appellant's testimony concerning his actions did not make sense. N.T. Trial at 121-24. On December 21, 2020, the trial court sentenced Appellant to two years' probation, payment of costs, and forfeiture of the Smith and Wesson handgun. Sentencing Order. Appellant filed a timely post sentence motion seeking a new trial on the ground that the trial court's guilty verdict was against the weight of the evidence. On April 27, 2021, the trial court entered an order denying Appellant's post sentence motion. Trial Court Opinion and Order, 4/27/21. This timely appeal followed.

Appellant raises a single issue in this appeal, the claim that the trial court's verdict must be set aside as against the weight of the evidence because the Commonwealth's witnesses allegedly testified so inconsistently that the testimony that Appellant made the threat and showed a gun could not be found credible.[2]

A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the evidence at trial was so tenuous, vague, and uncertain or the verdict was so contrary to the evidence that the verdict

_____

[2] While Appellant's brief lists two issues in the Statement of Questions in his brief, both of these issues assert the same contention, that the verdict was against the weight of the evidence because of inconsistencies in the Commonwealth's witnesses' testimony. Appellant's Brief at 7.

shocks the conscience of the trial court or its sense of justice. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017); ***Commonwealth v. Gilliam***, 249 A.3d 257, 269-70 (Pa. Super. 2021). Our review of the denial of a motion for a new trial based on weight of the evidence is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against the weight of the evidence. ***Commonwealth v. Clemons***, 200 A.3d 441, 463-64 (Pa. 2019); ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge …. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence ….

***Clay***, 64 A.3d at 1055 (quoting ***Commonwealth v. Widmer***, 744 A.2d 745 (Pa. 2000)).

Contrary to Appellant's argument, inconsistencies in eyewitness testimony do not preclude the finder of fact from finding those witnesses credible and do not make its verdict contrary to the weight of the evidence. ***Jacoby***, 170 A.3d at 1081; ***Commonwealth v. Jenkins***, 578 A.2d 960, 963 (Pa. Super. 1990); ***Commonwealth v. Denson***, No. 3330 EDA 2019, at 3-4, 7-8 (Pa. Super. February 3, 2021) (unpublished memorandum). Here, the trial court found that the Commonwealth witnesses were credible despite

some inconsistencies and explained why those inconsistencies did not make the witnesses incredible. Trial Court Opinion and Order, 4/27/21, at 8-9.

The trial court found that the inconsistencies between the three eyewitnesses' testimony and between Hayden Jr.'s testimony and his prior statements did not impair the Commonwealth's proof because the inconsistencies largely concerned collateral details and were differences in recollection that would logically arise due to the passage of time between the events in question and the trial. Trial Court Opinion and Order, 4/27/21, at 8. The trial court noted that Hayden Jr.'s and DeLuca's testimony was completely consistent on the fact that Appellant made a threat to "light this … up" in front of the house where they lived and that the only difference was in their recollection of the expletive that Appellant used. *Id.*; *see* N.T. Trial at 22, 26, 44, 56-57, 59-60. The trial court also noted that Hayden Jr.'s and Hayden Sr.'s testimony was consistent on the fact that Appellant put his hand on a gun during the encounter. Trial Court Opinion and Order, 4/27/21, at 8; *see* N.T. Trial at 22-23, 41, 76, 80. Neither the fact that DeLuca did not recall seeing Appellant brandish a gun nor the fact that Hayden Sr. did not hear Appellant make the threat, N.T. Trial at 59, 74, 86, required the trial court to reject Hayden Jr.'s, DeLuca's and Hayden Sr.'s testimony on those issues. DeLuca was farther away from Appellant's vehicle than Hayden Jr. and Hayden Sr. were when they saw Appellant's gun and Hayden Sr. testified that he was

on the phone with the police for part of the encounter with Appellant and had gone inside before the encounter ended.  ***Id.*** at 23, 41, 57, 76, 80, 86.

Because the trial court explained why it found that the inconsistencies between the Commonwealth's witnesses did not negate their credibility and its explanation is consistent with the record, it did not abuse its discretion in denying Appellant's motion for a new trial on weight of the evidence grounds.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/25/2022