J-S24029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                              :         PENNSYLVANIA
                              :
        v.                    :
                              :
                              :
                              :
ZACHARY ROBERT DUNLAP         :
                              :
        Appellant             :   No. 86 WDA 2025

Appeal from the Judgment of Sentence Entered December 27, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
            at No(s):  CP-65-CR-0003257-2021

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: NOVEMBER 13, 2025**

Zachary Robert Dunlap appeals from the judgment of sentence entered following his convictions for drug delivery resulting in death ("DDRD"), conspiracy, and possession with intent to deliver ("PWID").[1] Dunlap challenges the weight of the evidence. We affirm.

The trial court aptly summarized the facts at the jury trial as follows:

> On January 8, 2021, at approximately 4:22 p.m., Latrobe police were dispatched to [the victim's] address at 20 West Madison Street, Apartment 1, in Latrobe to investigate an apparent overdose. Hearing Transcript of Jury Trial, Day 2 ("HT 2") at 64. Latrobe police detective Matthew Reeves testified that he arrived at 4:27 p.m. and observed three firefighters performing cardiopulmonary resuscitation (CPR) on [the victim]. *Id.* at 67-68. He also observed two individuals, Megan Wingard ("Wingard") and Alex Montemurro ("Montemurro"), in a hallway near [the victim's] residence. *Id.* at 75-76. Emergency medical

---

[1] 18 Pa.C.S.A. §§ 2506(a), 903(a)(1); and 35 P.S. § 780-113(a)(30), respectively.

services transported [the victim] to Latrobe Hospital, where he was pronounced dead at approximately 5:04 p.m. on January 8, 2021. Commonwealth's Exhibit ("CW Exh.") 5.

Dunlap was tried by a jury on September 30, 2024, through October 2, 2024, which found Dunlap guilty of all charges: DDRD, Criminal Conspiracy – Delivery of a Controlled Substance, and [PWID]. Testimony and Facebook messages between Wingard and [Dunlap] establish the planning and execution of [Dunlap's] drug delivery. CW Exh. 2.

Wingard testified at trial that on January 8, 2021, [the victim] contacted her to obtain heroin. HT 2 at 129. Wingard then contacted [Dunlap] to obtain heroin for [the victim], and arranged for [Dunlap] to meet her with four bags of heroin at [the victim's] address. Id. at 117-123. [Dunlap] met Wingard outside of [the victim's] residence and delivered to Wingard four stamp bags containing the heroin/fentanyl in exchange for $40, which [the victim] had given to Wingard for the drugs. HT 2 at 117-23; 165; 168-69. The heroin/fentanyl that [Dunlap] delivered was packaged in stamp bags marked "Chucky" in red ink. *Id.*

After [Dunlap] and another person drove away, Wingard entered [the victim's] apartment and handed him the four red Chucky stamp bags of heroin/fentanyl that were delivered by [Dunlap]. HT 2 at 123-24. According Wingard, [the victim] gave one of the stamp bags to Montemurro and one to her. *Id.* at 124. [The victim] then "shot up" one of the red Chucky stamp bags that had just been delivered by [Dunlap] and Wingard. Within minutes, [the victim] dropped to his knees, his head went down, and he stopped moving. *Id.* at 124-26; 129-30. Montemurro administered Narcan to [the victim], but he or Wingard called 911 when [the victim] failed to regain consciousness. *Id.* at 126; 159.

The testimony, text and Facebook messages, and other evidence confirm that [Dunlap] delivered the heroin/fentanyl that [the victim] used on January 8, 2021, the day he overdosed.

Latrobe detective Matthew Reeves was dispatched to [the victim's] apartment to investigate [the victim's] apparent overdose and to control and secure the scene. HT 2 at 63-64; 72. Officer Reeves, a patrol officer at the time,

believed there was a chance [the victim] would not survive and notified Detective Wigand, who would lead the investigation. Officer Reeves testified that he observed evidence of drug use in [the victim's] apartment, including multiple stamp bags, syringes and other drug paraphernalia. *Id.* at 79.

Detective John Swartz from the forensic division of the Westmoreland County Detectives Bureau testified that on January 8, 2021, he responded to a call for forensics assistance at [the victim's] residence. Hearing Transcript of Jury Trial, Day 3 ("HT 3") at 234. Detective Swartz arrived at [the victim's] residence at 5:28 p.m. and met with Detective Wigand, who directed him to photograph the scene and help collect drug evidence that was apparent in the apartment. *Id.* Detective Swartz photographed, seized and packaged stamp bags and drug paraphernalia including drug injection and inhalation items. *Id.* at 236-37; 244-55. A total of four red Chuck stamp bags were recovered from decedent's residence, including three red Chucky stamp bags found on his person. HT 3 at 331-32.

On April 28, 2021, the Latrobe Police Department submitted Chucky stamp bags found in decedent's apartment to the Pennsylvania State Police Crime Laboratory for testing. HT 3 at 284; CW Exh. 2. The Crime Laboratory issued a report on May 10, 2021, confirming that the stamp bag tested contained the residue of heroin, fentanyl and flurofentanyl – Schedule I or II controlled substances under the Pennsylvania Criminal Code. HT 3 at 284; Crime Laboratory report admitted as CW Exh. 15.

The autopsy report revealed that [the victim's] cause of death was acute combined drug toxicity from fentanyl, acetyl fentanyl, heroin, amphetamine, methamphetamine, clonazepam, and cannabinoids, according to the report of Dr. Jennifer Hammers ("Dr. Hammers"). CW Exh. 5 at 4.

Dr. Hammers, a forensic pathologist with extensive training and experience in the field, testified at trial that fentanyl was the primary cause of [the victim's] death. HT 2 at 192; 196. She based her opinion on her examination of the autopsy, investigative reports from the coroner and the police, and testing performed on drug packet(s) collected at the scene of decedent's death. *Id.* at 174-180.

Trial Court Pa.R.A.P. 1925(a) Opinion ("1925(a) Op."), filed 3/21/25, at 2-5.

The jury found Dunlap guilty of the referenced offenses and the court sentenced him to concurrent terms of 10 to 20 years' incarceration for DDRD and two and one-half to five years' incarceration for conspiracy.[2] Dunlap filed a post-sentence motion, which the trial court denied. This timely appeal followed.

Dunlap raises the following issue:

1. Whether the Court of Common Pleas abused its discretion in denying [Dunlap's] Post-Sentence Motion when [Dunlap's] conviction is against the weight of the evidence when the victim died from the result of a toxic combination of multiple drugs in his system, evidence appeared to be tampered with, and the testimony given was inconsistent with the evidence in the matter?

Dunlap's Br. at 2.

Dunlap claims that his conviction for DDRD is a "shocking injustice" because it is the result of "the conclusion that he is responsible for the death of another individual over and above the other actors in this matter" including the individuals who delivered fentanyl to the victim. Dunlap's Br. at 11. He points out that none of the recovered fentanyl bags contained his DNA, and that the methamphetamine in the victim's body could have been given to him by Wingard, and claims that the scene was tampered with prior to the police arriving. He further claims that the jury should not have believed Wingard's testimony "beyond what was proven by other sources of evidence." *Id.* at 14.

---

[2] Dunlap's PWID conviction merged with DDRD.

We review a challenge to the trial court's rejection of a weight challenge for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing" an order granting or denying a weight claim. *Id.* at 1055 (citation omitted). "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence[.]" *Commonwealth v. Brown*, 212 A.3d 1076, 1085 (Pa.Super. 2019) (quoting *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004)). Thus, a trial court should not grant a new trial on the basis "of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Fallon*, 275 A.3d 1099, 1107 (Pa.Super. 2022) (citation omitted). A new trial should only be granted "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Clay*, 64 A.3d at 1055 (citation omitted).

Here, the jury as fact-finder was free to believe all part or none of the evidence presented. Wingard testified that she contacted Dunlap after the victim asked her to obtain heroin. According to the evidence, Dunlap went to the victim's home and, in exchange for $40 provided by the victim, handed Wingard four bags of a heroin/fentanyl mixture. The victim "shot up" one of the heroin/fentanyl bags and within minutes collapsed from an overdose. The

forensic pathologist, Dr. Hammers, explained that despite the numerous other substances in the victim's system, the fentanyl was "the primary substance that led to his death[.]" N.T, 10/1/24, at 192. She explicitly stated that "without that substance – meaning fentanyl – being present, [the victim] would have been unlikely to have passed away." *Id.* Considering all the evidence, we discern no abuse of discretion in the court's rejection of Dunlap's weight claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/13/2025